MUTUAL LIFE INS. CO. OF NEW YORK v. HURNI PACKING CO.*

(Circuit Court of Appeals, Eighth Circuit.  September 1, 1919.)

No. 5365.

1. INSURANCE ⊜➝291(6)—STATEMENTS IN APPLICATION OMITTING SLIGHT AFFECTIONS NOT FRAUDULENT.

An applicant for life insurance is not chargeable with fraudulent misstatements in his application, because he omitted from his statement of previous illnesses or diseases temporary affections such as colds, from which he recovered, where his answers were made in good faith.

2. INSURANCE ⊜➝292—FALSE STATEMENTS AS TO MEDICAL TREATMENT INVALIDATING POLICY.

A statement by an applicant for life insurance that he had not consulted nor been treated by a physician during the previous five years, when in

⊜➝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
260 F.—41          *Certiorari denied 250 U. S. —, 40 Sup. Ct. 178, 64 L. Ed. —.

fact he had been treated or prescribed for each year for supposedly temporary ailments, *held* a material misrepresentation, which under the terms of his contract invalidated the policy.

In Error to the District Court of the United States for the Northern District of Iowa; Henry T. Reed, Judge.

Action at law by the Hurni Packing Company against the Mutual Life Insurance Company of New York. Judgment for plaintiff, and defendant brings error. Reversed.

R. L. Read, of Des Moines, Iowa, and G. T. Struble, of Sioux City, Iowa (Read & Read, of Des Moines, Iowa, and Jepson & Struble, of Sioux City, Iowa, on the brief), for plaintiff in error.

Edwin J. Stason, of Sioux City, Iowa, for defendant in error.

Before SANBORN, Circuit Judge, and MUNGER and YOUMANS, District Judges.

MUNGER, District Judge. In this case Hurni Packing Company, the beneficiary of a life insurance policy issued in Iowa to Rudolf Hurni by the Mutual Life Insurance Company of New York, brought suit against the insurer for the amount of the policy. The answer alleged that the policy was not in force, because Hurni made fraudulent and false representations in his application for the policy, and thereby obtained the policy and the prerequisite certificate of health from the insurance company's medical examiner.

There was a trial to a jury, but at its close each of the parties asked the court for a directed verdict. The court directed a verdict for the plaintiff for the amount of the policy, and from the judgment thereon the insurer prosecutes this writ of error. The errors assigned relate to the direction of the verdict in favor of the plaintiff. There is very little dispute as to the facts.

To obtain the policy the insured made a written application, and he also signed a written statement, which he made to the medical examiner of the insurer on September 3, 1915. This statement contained the following questions and answers:

"18. What illness, diseases, injuries, or surgical operations have you had since childhood?

"Pneumonia, one attack; fall 1899; duration 3 weeks; severity moderate; results, good; don't remember date of recovery.

"19. State every physician or practitioner who has prescribed for or treated you, or whom you have consulted in the past five years.

"None consulted.

"20. Have you stated, in answer to question 18, all illnesses, diseases, injuries, or surgical operations which you have had since childhood?

"Yes.

"21. Have you stated, in answer to question 19, every physician and practitioner consulted during the past five years and dates of consultation?

"Yes.

"22. Are you in good health?

"Yes."

Hurni died in July, 1917, aged 47 years. He had resided at Sioux City, Iowa, since 1885, and had been engaged in the meat-packing business for many years before his death. He was the principal own-

er of this business and gave it his personal attention, regularly devoting long days of service to its demands. In 1899 Hurni had an attack of pneumonia, but recovered. After that he was subject to what his wife called "colds" two or three times a year, sometimes confining him to his house for a day. Dr. Clingan was Hurni's regular family physician, and he testified that he made one professional visit to see Hurni in 1911 and prescribed for him; that Hurni consulted him at his office on February 21, and also on April 24, 1912, and he then gave him medical treatment; that he visited and prescribed for Hurni at his home on October 4, 1913; and that Hurni consulted him and he prescribed for him twice thereafter during that year; that Hurni came to his office once in 1914, and obtained a prescription; and that in 1915 and prior to September 2 (which was the date of Hurni's statement to the insurance company's examiner) he had professionally visited Hurni on March 9 and also on May 31. Dr. Clingan testified that most of Hurni's illnesses were of an influenza nature, and all resulted from overwork. Hurni spent the greater part of June, July, and August, of 1913, at the health resort of Excelsior Springs, Mo. Dr. Clingan had examined him before he made this trip, had advised that he go there, and had told him that if he did not get away from his work he would collapse. At Excelsior Springs, Hurni consulted Dr. Bogaard, and then consulted Dr. Prather, was examined by him for half an hour, and thereafter, during his stay at Excelsior Springs, Hurni went to Dr. Prather's office for serum treatments, of which he took a number, which his wife estimates as a dozen, although she said it might have been 30. These treatments were given to Hurni by hypodermic injections.

The medical examiner for the insurance company, in addition to taking the statement referred to, also made a physical examination of the applicant, and then recommended him to the insurance company as a fit subject for insurance. In doing so he relied upon the truth of Hurni's statements, as well as upon the results of his observations, in making the physical examination.

The questions involved in this case are somewhat narrowed by reason of the provisions of section 1812 of the Iowa Code of 1897, which reads as follows:

"In any case where the medical examiner, or physician acting as such, of any life insurance company or association doing business in the state shall issue a certificate of health or declare the applicant a fit subject for insurance, or so report to the company or association or its agent under the rules and regulations of such company or association, it shall be thereby estopped from setting up in defense of the action on such policy or certificate that the assured was not in the condition of health required by the policy at the time of the issuance or delivery thereof, unless the same was procured by or through the fraud or deceit of the assured."

As construed by the Supreme Court of Iowa, the estoppel provided by this statute extends, not only to the assured's condition of health at the time the policy is issued, but relates to all matters inquired about, so far as they bear on the health and physical condition of the applicant as affecting the risk. Peterson v. Des Moines Life Association, 115 Iowa, 668, 87 N. W. 397.

Applying this statute, the question presented in this case is whether the evidence produced was such that it was the duty of the court to declare as a matter of law that the medical examiner's report was not obtained by the assured's fraud and deceit.

[1] The particular issues disclosed by the contentions of the parties are whether these statements by the assured were material and knowingly false. These statements related to the illnesses or diseases suffered by applicant, and to consultations, treatments, and prescriptions by physicians in the preceding five years. The evidence does not show the existence of any undisclosed illness or disease suffered by Hurni; unless it can be said that the colds to which he was subject were such illnesses. The existence of such colds may have been material for the medical examiner's purposes, but neither Hurni nor his physician regarded them as more than casual disturbances, and complete recovery followed each attack. His answer to these questions was only the expression of his opinion as to whether such colds amounted to disease or illness, and good faith in stating this opinion was all that was required of the applicant. Moulor v. American Life Ins. Co., 111 U. S. 335, 4 Sup. Ct. 466, 28 L. Ed. 447; Ley v. Metropolitan Life Ins. Co., 120 Iowa, 203, 94 N. W. 568; Lakka v. Modern Brotherhood of America, 163 Iowa, 159, 143 N. W. 513, 49 L. R. A. (N. S.) 902; Joyce on Ins. § 2003; Connecticut Mutual Life Ins. Co. v. Union Trust Co., 112 U. S. 250, 5 Sup. Ct. 119, 28 L. Ed. 708; Fidelity Mutual Life Ass'n v. Miller, 92 Fed. 63, 34 C. C. A. 211.

[2] The evidence showed that Hurni's reiterated statement that he had consulted no physician within five years was untrue, and that it was believed and relied upon by the medical examiner, and was a material inducement to the making of a favorable report and the issuance of the policy. It is not contended that Hurni did not know the statement to be false, nor could it be possible that he should have forgotten the repeated visits and treatments of his family physician, both at his home, when he was confined to his bed, and when he had called at the physician's office. Nor could he have forgotten that in the three months' absence at a health resort, following his physician's advice to go there, as he was in danger of collapse, that he had consulted with two physicians, and had taken a dozen or more hypodermic injections of serum treatment. The contention that is made is that these representations were not of a material fact, and were therefore not fraudulent, and the trial court evidently adopted this view in directing a verdict for the plaintiff.

In Penn Mut. Life Ins. Co. v. Mechanics' Savings Bank & Trust Co., 72 Fed. 413, 19 C. C. A. 286, 38 L. R. A. 33, 70, Judge Taft, for the Court of Appeals, used this language:

"Materiality of a fact, in insurance law, is subjective. It concerns rather the impression which the fact claimed to be material would reasonably and naturally convey to the insurer's mind before the event, and at the time the insurance is effected, than the subsequent actual causal connection between the fact, or the probable cause it evidences, and the event. Thus, it is by no means conclusive upon the question of the materiality of a fact that it was actually one link in a chain of causes leading to the event. Watson v. Main-

waring, 4 Taunt. 763; Jones v. Insurance Co., 3 C. B. (N. S.) 65; Rose v. Insurance Co., 2 Ir. Jur. 206; Insurance Co. v. Schultz, 73 Ill. 586. And, on the other hand, it does not disprove that a fact may have been material to the risk because it had no actual subsequent relation to the manner in which the event insured against did occur. A fair test of the materiality of a fact is found, therefore, in the answer to the question whether reasonably careful and intelligent men would have regarded the fact, communicated at the time of effecting the insurance, as substantially increasing the chances of the loss insured against."

A chief part of any insurance company's business is a discrimination in selecting risks lest the natural and average losses may be exceeded. The purpose of the inquiries made as to prior consultations or treatments by physicians is to furnish to a life insurance company the information, either that the applicant has had continuous prior good health or the names of the practitioners consulted, so that the company may decide what further inquiries should be made in view of such disclosures. That such consultations were for what seemed to the applicant or his physician but trivial ailments is beside the question. It is the materiality to the company's investigation and decision as to acceptance of the risk that is involved. Inquiries as to prior attacks necessitating the attendance of physicians may disclose information not to be found by the medical examiner's own efforts. The history of the patient may be quite essential to supplement a physical examination.

In this case Hurni as a part of his application stipulated that he made the truth of his statements an inducement to the company to issue the policy. The testimony is undisputed that the medical examiner relied upon these statements, and would not have reported him favorably as a risk, if he had known of his consultations with physicians. The taking of serum injections, as a physician's treatments, presumably to overcome an infection, during a prolonged sojourn at a health resort, was a significant fact that an insurance company might not wish to ignore. It is a material inquiry, as to which reasonable minds cannot differ, and therefore for the court to decide as a matter of law, when an applicant for life insurance falsely answers whether or not he has had other applications for insurance which were not granted, or were canceled. Ætna Life Ins. Co. v. Moore, 231 U. S. 543, 34 Sup. Ct. 186, 58 L. Ed. 356; Prudential Ins. Co. v. Moore, 231 U. S. 560, 34 Sup. Ct. 191, 58 L. Ed. 367; American Temperance Life Ins. Ass'n v. Solomon, 233 Fed. 213, 147 C. C. A. 219; Maryland Casualty Co. v. Eddy, 239 Fed. 477, 152 C. C. A. 355; Equitable Life Assur. Society v. Keiper, 165 Fed. 595, 91 C. C. A. 433; Home Life Ins. Co. v. Myers, 112 Fed. 846, 50 C. C. A. 544.

It is likewise a material inquiry whether such applicant has consulted or been prescribed for by a physician within a limited period, such as five years, before the application, when such consultations have occurred once or more annually for several years, or when such consultations have been followed by prolonged treatment by serum injections. Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 622, 36 Sup. Ct. 676, 60 L. Ed. 1202; Metropolitan Life Ins. Co. v. McTague, 49 N. J. Law, 587, 9 Atl. 766, 60 Am. Rep. 661.

The answer having been untrue, and the matter material, and the maker of the statement necessarily knowing that it was untrue when he made it, the intention to deceive the insurer is necessarily implied as the natural consequence of such act. Claflin v. Commonwealth Ins. Co., 110 U. S. 81, 3 Sup. Ct. 507, 28 L. Ed. 706; Northwestern Mut. Life Ins. Co. v. Montgomery, 116 Ga. 799, 43 S. E. 79; Boddy v. Henry, 126 Iowa, 31, 101 N. W. 447; Kerr on Fraud, p..55.

On the evidence as presented, the court should have directed a verdict for the defendant. The judgment of the lower court is therefore reversed, and a new trial ordered.