**PILOT LIFE INS. CO. v. DICKINSON.**

No. 4218.

Circuit Court of Appeals, Fourth Circuit.
Jan. 4, 1938.

Before PARKER and SOPER, Circuit Judges, and WILLIAM C. COLEMAN, District Judge.

Pinckney L. Cain and Alva M. Lumpkin, both of Columbia, S. C. (Thomas, Lumpkin & Cain, of Columbia, S. C., and Smith, Wharton & Hudgins, of Greensboro, N. C., on the brief), for appellant.

C. B. Ruffin, of Hartsville, S. C. (R. E. Dennis, of Bishopville, S. C., on the brief), for appellee.

PARKER, Circuit Judge.

This is an action instituted to recover on a policy of life insurance. The defense of the company is that the insured made false answers to questions contained in his application and failed to disclose a diseased condition for which he had been treated. Plaintiff contended that the insured had answered the questions truthfully and had made full disclosure in the light of his knowledge at the time of the application. There was verdict and judgment for the plaintiff, and the company has appealed. The principal exception relates to the refusal of the court to direct a verdict for defendant.

766

The questions and answers upon which the company relies for its defense are 7–A, 7–K, and 8–B. With these must be considered also the answer to 7–J. These questions and answers are as follows:

"7–A: Have you ever suffered any disease of the brain or nervous system? Answer, No.

"7–J: Have you ever been a patient in any sanitorium, hospital or asylum? Answer, Yes: (under name of ailment, disease or injury) Bad teeth: (under number of attacks, date, duration, severity, results, name and address of attending physician) teeth all removed.

"7–K: Have you consulted a doctor for any cause not included in above? Answer, No.

"8–B: Are you aware of any physical defect or have you had any complaint not mentioned above? Answer, No."

There was testimony that at the time insured's teeth were removed, which was more than two years before the application for the policy, he was admitted to a hospital suffering from a general toxic condition resulting in attacks of vertigo, temporary lapses of consciousness, loss of speech, and temporary attacks of weakness in his extremities. A careful diagnosis of his condition was made, and the diagnostician reported that his condition might be due to one of three sources; extensive infection of the teeth, obesity, or excessive use of tobacco. The extraction of the teeth was advised; and, after they had been extracted, insured recovered his health and attended to his extensive business enterprises as usual. He was apparently in good health when he was examined for this insurance two years later by the same physician who treated him when his teeth were removed.

Insured died from cerebral thrombosis a few months after the issuance of the policy, and there was testimony of medical experts tending to show that he must have been suffering from the disease that resulted in his death at the time he was admitted to the hospital more than two years prior thereto. On the other hand, the evidence is that the physician who treated him at that time advised that his teeth were the cause of the trouble; that this was the opinion also of the diagnostician who examined him; that recovery followed the extraction of the teeth; that insured believed himself to be sound and well following their extraction; that this belief was shared by the physician who treated him; that he and that physician discussed his hospitalization at the time of the application for insurance; and that the physician himself directed the answer that was given. Collusion between the insured and the physician is not suggested, and the insured is shown to have been a man of high character and standing in his community. Any attempt to defraud the company is negatived by the fact that when a policy for $10,000, double the amount applied for, was offered the insured, he declined to accept it and delayed acceptance of any policy until one in the amount for which he had applied could be written.

Under these circumstances we think that the court properly denied the motion for directed verdict. It is well settled that, for the purposes of such a motion, the evidence must be viewed in the light most favorable to plaintiff; and when the evidence here is so viewed, there is no ground upon which the verdict could have been directed. While there was evidence that insured may have suffered from a disease of the brain or nervous system prior to his application, as inquired about in question 7–A, there was evidence also from which a contrary conclusion might reasonably have been drawn; and certainly there was ample evidence to justify a finding that he did not know that he had suffered from such a disease. The negative answers to questions 7–K and 8–B are true when there is read into them the exception for which they provide and which is contained in the answer to 7–J. The insured in answer to that question truthfully stated what his attending physician had told him was the "ailment or disease" which had sent him to the hospital. No inquiry was made of him as to the symptoms attending the disease, and no reason is suggested why he should have disbelieved what the physician had told him.

The questions contained in the application here, as in the case of Moulor v. American Life Ins. Co., 111 U.S. 335, 4 S.Ct. 466, 469, 28 L.Ed. 447, show clearly that good faith in answering them was all that was required of the applicant; and this is emphasized by the statement required of him as a part of his application to the effect that the answers made were true to the best of his "knowledge, in-

formation and belief." If the company intended to rely upon the answers as warranties against the existence of diseases with which the applicant did not know or believe himself to be afflicted, specific provision to that effect should have been made either in the policy or in the application. As was said in the Moulor Case, supra: "In the absence of explicit, unequivocal stipulations requiring such an interpretation, it should not be inferred that a person took a life policy with the distinct understanding that it should be void, and all premiums paid thereon forfeited, if at any time in the past, however remote, he was, whether conscious of the fact or not, afflicted with some one of the diseases mentioned in the question to which he was required to make a categorical answer. If those who organize and control life insurance companies wish to exact from the applicant, as a condition precedent to a valid contract, a guaranty against the existence of diseases, of the presence of which in his system he has and can have no knowledge, and which even skilful physicians are often unable, after the most careful examination, to detect, the terms of the contract to that effect must be so clear as to exclude any other conclusion."

See, also, Jeffress v. New York Life Ins. Co., 4 Cir., 74 F.2d 874, 876; Cooley's Briefs on the Law of Insurance, 2d Ed., p. 3286 et seq.

Other exceptions mentioned in the brief require little discussion. One of them, to the effect that an expert witness was asked by the court to express an opinion upon a matter within the province of the jury, is answered by the fact that counsel for defendant himself suggested the question and also by the fact that the answer when given could not be said to be objectionable. Complaint is made that the judge did not sufficiently instruct the jury as to the duty of the applicant to disclose all facts which would bear upon the condition of his health. We think, however, that this aspect of the case was fully covered. At the request of the defendant the court gave the jury the following special instruction: "I am requested . to charge you further: 'No. 8. I charge you further that, even though you find from the evidence that the applicant, at the time of making the application, believed himself to be in sound health, and that he had fully recovered from any illness or disability he had previously suffered, he was nevertheless under the duty to make a full, frank and complete disclosure of all matters, relating to his past health, consultations with physicians, and confinement in hospitals, and if you find that he failed and refused to do so, and that such matters as were concealed were material to the risk, then I charge you that the insurance contract was voidable at the option of the defendant, and if you find that the defendant elected to declare the policy void, then your verdict shall be for the defendant.'" After so charging the jury, the judge gave the following explanation, which was manifestly correct: "I charge you that, gentlemen, with the qualification that, in order for the defendant to elect to declare the policy void, you must find that he refused and failed to disclose to the company facts within his knowledge, by information or experience of condition shown to have existed prior to the time of his application, which would have affected his insurability." Certainly these instructions substantially covered the law applicable and gave the defendant full benefit of the rule which it was seeking to invoke.

There was no error, and the judgment appealed from will be affirmed.

Affirmed.