SARA WINER, a Widow, v. NEW YORK LIFE INSURANCE COMPANY.

197 So. 487
En Banc
Opinion Filed July 12, 1940
Rehearing Denied August 2, 1940

*Rosenhouse & Rosenhouse,* for Appellant;

*Shutts & Bowen* and *E. S. Quick,* for Appellee.

BROWN, J.—This case is before us on an appeal from a final decree of the Circuit Court for Dade County. The bill of complaint sought cancellation of a reinstated life insurance policy after the death of the insured on the ground of false representations made in the application for reinstatement, the falsity of which did not come to the insurer's knowledge until after insured's death. The policy was issued November 4, 1931, and contained a clause to the effect that it would be incontestable after two years from date of issue; it lapsed for non-payment of premium July 26, 1933, and was reinstated on application made October 2, 1933. Insured died June 24, 1935. The beneficiary was notified of the insurer's election to rescind on July 26, 1935. The bill of complaint was filed September 19, 1935.

It is not necessary to again set out here the questions involved on the former appeal. The original opinion therein is reported in 130 Fla. 115, 177 So. 224, and the opinion on rehearing appears in 138 Fla. 818, 190 So. 894.

This second appeal is from the final decree on pleadings and proof, and all interlocutory orders. The appellant in this case is Sara Winer, a widow, who was made the beneficiary in a life insurance policy issued to Edward Winer, her deceased husband, on November 4, 1931. The insured failed to pay the quarterly premium due on said policy on July 26, 1933, and it lapsed. This suit was brought by the appellee insurance company to have the policy cancelled and the appellants enjoined from enforcing it on the ground that in the application to reinstate the policy the insured answered falsely two questions. The premiums that had

been paid on the policy were tendered into court by the insurer to be returned to the defendant under order of the court.

In order to induce the insurer to reinstate the policy, the insured (on one of the company's applications to reinstate) stated to the company in writing duly signed by him as follows:

"I hereby apply for reinstatement of the above numbered Policy which lapsed for non-payment of premium due on the 26th day of July, 1933, and, for the purpose of inducing the Company to reinstate said Policy, I make the representations contained in my answers to the following questions:

"1. Are you now, to the best of your knowledge and belief, in the same condition of health as you were when this policy was issued? (If not, give details.) Ans. YES.

"2. Within the past two years have you had any illnesses, diseases or bodily injuries or have you consulted or been treated by any physician or physicians? (If so, give full details, including nature, date, and duration of each illness, disease or injury, the name of each physician, and the dates of and reasons for consultation or treatment.) Ans. No.

" * * * I hereby certify that the foregoing answers are full, complete and true, and agree that the Company believing them to be true shall rely and act thereon."

A special master, Hon. Norris McElya, was appointed to hear the evidence and report same together with his findings of fact and conclusion of law to the court.

Mr. Edwards, agent for the insurance company, testified that he read these questions to the insured, Mr. Winer, and wrote out the answers as given by Mr. Winer, and that Mr. Winer then signed the application for reinstatement. The agent also said that he had conversed with Winer from

time to time and that Winer spoke the English language; that he, the agent, did not know that Mr. Winer had had any illnesses or injuries of any sort; that the insured knew that the policy had lapsed and that he was applying for its reinstatement.

The testimony further showed that the insured on April 3, 1933, after a continuous nose bleeding for twelve hours, visited and consulted Dr. M. H. Tallman and Dr. M. P. DeBoe, licensed and practicing physicians in Miami, Florida. Dr. Tallman testified at the hearing before the master in the court below that when Mr. Winer, the insured, visited his office on April 3, 1933, the insured was suffering from "cardio-vascular renal disease of the hypertensive type, which means .that he had a generalized arteriosclerosis, and that it affected his heart, blood vessels and kidneys, and that his blood pressure was elevated, both the systolic and diastolic;" that his disease was serious, "usually progressive, and in the maligant type, such as he had, death usually ensues within a few years;" that he advised the insured that he would have to go upon a very strict regime if he expected to have any improvement in his condition, and on this first visit he prescribed a milk diet without other foods or liquids; that insured called again on August 7, 1933, and the diet solely of milk was continued; that when insured called on April 14, 1933, he prescribed a change from the milk diet to a raw food diet. Dr. Tallman further testified that the changes in insured's condition during this twelve-day treatment indicated to him that insured's condition was chronic; that although he did not discharge the case, the insured did not call again at his office until April 30, 1935; that he treated the insured during his last illness; that the disease from which insured died was a continuation of the same disease from which he was suffering when he first called for treatment on April 3, 1933; that during the twelve-day

treatment in 1933 the insured's condition improved, but he never recovered to a point where you would say he was a well man again.

The testimony further showed that Dr. Tallman on April 3, 1933, also referred insured to Dr. M. P. DeBoe for treatment for the nose hemorrhage. Dr. DeBoe testified that insured came to him for treatment on that date and that he treated him for the hemorrhage; that the hemorrhage was due to a systemic condition, and was not due to any injury; that there had been a spontaneous rupture of a blood vessel, which in his opinion was caused by high blood pressure or deterioration of the blood vessels or both.

It should be stated, however, that the testimony does not affirmatively show that the physicians acquainted the insured with his then condition other than the natural inferences that any one, however uneducated, would draw from the drastic treatment prescribed.

The testimony of the Miami agent and the home officials of the appellee company tends to show that it is the policy of the company to rely on positive answers to the representations which were found on insured's application for reinstatement, and that it was their policy to require a thorough medical examination where the answers were not satisfactory or where they had reason to believe that insured was not in good health, and that, therefore, they did rely on the representation in this case..

Witnesses for the appellant were Mrs. Sara Winer, appellant; Abraham Winer, her son; and M. H. Rosenhouse, attorney for the insured. They testified that the insured could not *read* or *write* the English language, but could sign his name, and that he did not handle his business transactions, but that they were handled by his son and his attorney. Mr. Rosenhouse testified that Mr. Winer could carry on an ordinary conversation in English very well, pro-

vided it did not involve any intricate business matter. It also appears that the insured had been in the real estate business. The fair inference from the testimony as a whole is that Mr. Winer could understand and speak English, and understand the questions in the application which he signed.

Appellant testified that in April, 1933, insured went to Dr. M. H. Tallman with a "nose-bleed," and that Dr. Tallman put him on a milk diet just for a day; that he wasn't sick and did not know he was suffering from heart trouble.

Although the master's report of findings states that it does not positively appear from the testimony that when insured made application for reinstatement of his policy that he was not to the best of his information and belief in the same condition of health as when the said policy was issued to him, or that he knew of any diseases or bodily injuries incurred or had within two years prior to the said application, the report does state that the testimony disclosed that the insured had within two years of making application for reinstatement of his policy consulted and been treated by two physicians and that if he had disclosed this fact to the insurance company a further investigation would have been made, and that the reinstatement would probably have been refused; that, therefore, he is of the opinion that the relief prayed for in the bill of complaint should be granted.

The appellant excepted to the master's report, but the court in the final decree overruled the exceptions, confirmed, and in all respects approved the master's report and cancelled the policy.

The appellant contends that the appellee company is not entitled to rescind the reinstatement, unless it affirmatively appears that the insured formed a conscious intention to deceive the insurer, and also that it does not affirmatively

appear that the insured acted in bad faith. This Court laid down the rule in New York Life Ins. Co. v. Kincaid, 122 Fla. 283, 165 So. 553, that the test where insured failed to make a full disclosure with reference to insurability in application for reinstatement of a lapsed policy of life insurance is whether or not the insured answered the questions in good faith, and that the question of good faith of the insured is for the jury to determine. In support of this we cited Mutual Life Ins. Co. of New York v. Hurni Packing Co., 260 Fed. 641, text 646; New York Life Ins. Co. v. McCarthy, 22 Fed. (2d) 241; Mouler v. Am. Life Ins. Co., 111 U. S. 335, 4 Sup. Ct. 466, 28 L. Ed. 447; Rose's Notes, Rev. Ed. Supplement to Vol. 2, page 783; also Vol. 12, pages 544, 545; Couch on Insurance. This rule should be applied to the present case, but since this is a suit in equity the question of good faith of the insured is left to the chancellor to determine. The question of good faith of the insured at the time of answering the questions in the application for reinstatement is the sole issue in this case. If the insured did not answer the questions in good faith the appellant beneficiary is not entitled to judgment.

The appellant cites Fisher v. Missouri State Life Insurance Company, 97 Fla. 512, 121 So. 799, as one of the cases upon which she relies. This case is not in point with the present case. It was not decided on the question of good faith of the insured, but the court held there that insured's answer to the question of insurability was evasive and that insurer in accepting it waived the right to rely upon the representations. The answers in the present case were not evasive, unresponsive or ambiguous.

Also the case of New York Life Insurance Company v. Kincaid, *supra,* is cited by appellant to support her contention that the insured did not act in bad faith. Although this case recited that the test is good faith of the insured

(as discussed, *supra*) it is not decided on this point. In that case the insured in his application for reinstatement of lapsed policies, admitted that he had been treated by a certain Dr. W. Osenback, although he did not fully divulge all the complaints for which he had been treated. The insurer received a statement from Dr. Osenback in which the physician disclosed that he had treated the applicant, but this disclosure was not full and complete. In the opinion in that case the court makes the following pertinent statement at page 294, Florida Reports, Vol. 122:

'The company did not rely on Kincaid's answers to the questionnaire, but made additional investigation before reinstating the policies. All the evidence relied on to cancel the reinstated policies were present and available at the time of reinstatement."

In the instant case the insured concealed the fact that he had consulted a physician, and as a consequence the insurer made no investigation. If the insured had truthfully answered the questions, the insurer would thereby have been supplied the data and means of discovering the true condition of the insured's health.

Appellant further quotes from Wharton v. Aetna Life Ins. Co., 48 Fed. (2d) 37, with which quotation we agree: "The burden of proof was, of course, upon the defendant, and fraud is not to be presumed. An applicant for insurance is not required, nor indeed expected to disclose the fact of consulting a physician for slight or temporary ailments such as an ordinary cold, inability to sleep, constipation, headache, or the like."

The federal courts hold (quoting from New York Life Ins. Co. v. Wertheimer, 272 Fed. 730) that:

"A positive statement of fact, falsely made, with respect to a material matter, will, nothing else appearing, be deemed to have been made wilfully and with intent to deceive. It is

only when the consultation and treatment relates to such temporary disorders or ailments as do not conflict with the definition of good or sound health as given above that negative answers to questions of this character can be disregarded as immaterial. See Mutual Life Ins. Co. of New York v. Hurni Packing Co. (8 C. C. A.), 260 Fed. 641, 171 C. C. A. 405; Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 622, 36 Sup Ct. 676, 60 L. Ed. 1202; Plumb v. Penn Mutual Life Ins. Co., 108 Mich. 94, 65 N. W. 611. If the answer is untrue, and the matter is material, and the maker of the statement necessarily knows that it was not true when he made it, the intention to deceive the insurer is necessarily implied as a consequence of such act. See Mutual Life Ins. Co. v. Hurni Packing Co., *supra,* 260 Fed. 646, 171 C. C. A. 405; Claflin v. Commonwealth Ins. Co., 110 U. S. 81, 3 Sup. Ct. 507, 28 L. Ed. 76."

New York Life Ins. Co. v. Horton, 235 Ala. 626, 180 So. 277, involved the reinstatement of a lapsed policy issued by the appellant company. It was a suit at law on the policy. The application was in the same form as the one now before the court, and, like it, concealed the fact that the applicant had been ill or had been treated by a physician within two years. A statute of Alabama provides in effect that no written misrepresentation in an application for insurance shall void the policy, unless such misrepresentation is made with actual intent to deceive, or unles the matter misrepresented increases the risk of loss. In holding that the plaintiff insurance company and not the defendant in the court below was entitled to an affirmative jury charge the Alabama Supreme Court on rehearing said:

'This answer was patently untrue. At that time, and for more than two months prior thereto the insured was a 'sick man' and was then, and had been for more than two months under the observation and treatment of a physician. Not

only this, but insured had been advised by his physician that a thorough physical examination should be made to determine the nature of his illness. It was without dispute in the evidence that the two physicians who were then treating the insured, had formed the opinion in January, 1936, that he was afflicted with Hodgkin's disease, which was a fatal malady. The misrepresentation of the insured that he had not consulted a physician had the effect to increase the risk of loss. Mutual Life Ins. Co. of New York v. Allen, 174 Ala. 511, 56 So. 568. If the insured had truthfully answered the question, the defendant company would thereby have been supplied the data and means of discovering the true condition of insured's health.

"Under the second alternative of the statute, it would be of no moment that the insured was not aware of the fact he was afflicted with Hodgkin's disease. He was in fact a sick man, and had been for two months or more, and all the while under treatment of a physician. A candid and truthful answer would have enabled the insurer to discover the true facts with reference to the insured's health. Insurance companies are entitled to candid and truthful answers, and when such candor is withheld and involves matters material to the risk, no just complaint can be raised, when, in after investigations, the falsity is discovered and the policies issued in reliance upon the truthfulness of the statements are avoided."

Fraud is conceived in the innermost recesses of the mind. In the present case it would be difficult if not impossible to affirmatively know in a positive manner without considering the surrounding circumstances that in answering the questions in this case the insured had bad faith and a conscious intent to practice a fraud on appellee insurance company.

Here the insured by his answer to the question in the reinstatement application stated that within the past two

years he had not had any illnesses, diseases, or bodily injuries, nor had he consulted or been treated by any physician or physicians. Appellant contends that the insured could not read or write English, other than to sign his name. It appears, however, that he could speak English. He therefore, must have understood the meaning of the simple questions propounded to him in the reinstatement application.

That the answers of the insured were false cannot be denied. In less than six months prior to his application for reinstatement the insured was a sick man. As stated by his physician, he was suffering from a generalized arteriosclerosis, affecting the heart, blood vessels, and kidneys, and the disease had so advanced as to cause high blood pressure or deterioration of the blood vessels or both, so that at that time there had as a result been a rupture of a blood vessel which brought on a nose hemorrhage. The examination of the insured by his two physicians caused them to prescribe a diet consisting only of milk at the time of the first consultation, and a continuation of the diet four days later, at the time of the second consultation, which continued for seven days thereafter when the diet was changed to one consisting only of raw food. The insured's own outward and inward symptoms coupled with this drastic restrictive diet was sufficient to convince even one of subnormal or very ordinary intelligence that he was a very sick man. Had the insured truthfully answered the questions the insurer would thereby have been supplied with data and means of discovering the true condition of insured's health. This unmistakably was his duty in the exercise of good faith in his application for reinstatement of the policy. There is ample testimony to support the findings of the special master and the final decree thereon made by the chancellor. We find no error in the final decree of the court below.

Affirmed.

BUFORD and THOMAS, J. J., concur.

WHITFIELD, P. J., and CHAPMAN, J., dissent.

Chief Justice TERRELL not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.