**METROPOLITAN LIFE INS. CO. v. MADDEN et al.**

**MADDEN v. METROPOLITAN LIFE INS. CO.**

No. 9719.

Circuit Court of Appeals, Fifth Circuit.

Feb. 5, 1941.

Peter O. Knight, C. Fred Thompson, P. O. Knight, Jr., and Jno. Bell, all of Tampa, Fla., for appellant, Metropolitan Life Ins. Co.

Morris E. White and Calvin Johnson, both of Tampa, Fla., opposed.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellee, Marguerite Madden, sued appellant on one, appellee, Madden Furniture, Inc., sued it on two, policies[1] for $5,000 each, issued on the life of Derrel D. Madden, and the suits were consolidated. In each suit statutory attorney's fees were claimed. The defenses to the policies were false answers by Madden to questions in his applications[2] for insurance. Each of the three applications contained the Question 11, "Have you ever had any ailment or disease of (c) The Stomach or Intestines?", to each the applicant answered "No." It was alleged that he had had an ailment or disease of the stomach or intestines, having suffered cardio spasm or spasmodic contractions of the cardiac end of his stomach and adjoining esophagus during or about the month of October, 1937. Each of the applications also contained the question: "13. What clinics, hospitals, physicians,

healers or other practitioners, if any, not named above, have you consulted or been treated by, within the past five years? If none, so state", to which the applicant answered "none." Liability to Marguerite Madden, for the statutory attorney's fee, was defended on the ground that the insurance was bound in, and the contract was governed by the laws of New York.

At the close of all the evidence, plaintiffs and defendant each moved for a directed verdict, plaintiffs on the ground that it appeared as matter of law that, no material, false representations were made; the defendant on these grounds. "First, the defendant has shown by the preponderance of the evidence that the insured under the policies herein involved falsely represented a material fact, to-wit, his consultation of a physician within five years immediately preceding each of his applications for the policies in question and such consultation is shown by the evidence to be of such a nature, as to be a misrepresentation as a matter of law. Second, the defendant has shown by uncontradicted evidence that the insured in the policies herein involved falsely represented a material fact, to-wit: His having an ailment of the stomach or intestines, and such a misrepresentation is material as a matter of law."

The motions were denied, the causes were submitted to a jury and there was a verdict and judgment for the plaintiff in each case for the full amount sued for, except that attorney's fees were denied Marguerite Madden. Appealing from these

---

[1] Each of the policies contained these provisions: "This Policy is issued in consideration of the Application therefor, copy of which Application is attached hereto and made part hereof, and of the payment for said insurance on the life of the above named Insured, of Seventy Dollars and Five cents, and of the payment hereafter of a like Annual premium on each 20th day of January, during the term of Ten years or until the prior death of the Insured.

"The Provisions and Benefits printed or written by the Company on the following pages are a part of this Policy as fully as if recited over the signatures hereto affixed.

"Entire Contract:—This Policy and the application therefor, a copy of which is attached hereto as a part hereof, constitute the entire contract between the parties, and all statements made by the Insured shall in the absence of fraud, be deemed representations and not warran-

ties, and no statement shall avoid this Policy or be used in defense of a claim hereunder unless it be contained in the application therefor and a copy of such application is indorsed upon or attached to this Policy when issued."

[2] Each application provided over applicant's signature: "It is understood and agreed that, the foregoing statements and answers are correct and wholly true and, together with the answers to questions on Part B hereof, shall form the basis of the contract of insurance, if one be issued."

At the bottom of Part B over the signature of the applicant, the following appears: "I Hereby Certify That: (1) I have read the answers to the questions in Part A and Part B hereof, before signing, (2) they have been correctly written, as given by me, (3) they are full true and complete, and (4) there are no exceptions to any such answers other than as stated herein."

judgments, defendant is here insisting (1) that because of proven misrepresentations in the applications, a verdict should have been directed for it and (2) that if not, the judgments should be reversed for errors in the charge and in ruling on the admission of evidence.

Plaintiff, by cross-appeal, insists that the disallowance of attorney's fees was error.

There was no dispute as to the material facts, the most material being testified to by Dr. Clark of Gadsden, Alabama, whose deposition defendant introduced. Madden was manager of a furniture business in Gadsden, Alabama, from January, 1936, until he moved to Tampa in August of 1938 to establish the business known as Madden Furniture, Inc., of which he was secretary and treasurer. Dr. Clark knew Madden and was a customer of his. One day, while Clark was shopping in the furniture store, Madden told him that he had indigestion. The doctor suggested that he come to the office if he wanted to be examined. Either on this occasion or previously at the store, Madden had mentioned his having a cold to Dr. Clark. The doctor's history sheet was not accurate as to the time of treatment for the cold, it did not show the exact date of the first visit, but the first complaint noted thereon was cold in the head with some pain in the neck and legs, the finding was that he had a slight cold. On this first visit, or on a subsequent visit soon after, at any rate, on October 15, 1937, Madden complained of a sense of fullness in the epigastrium particularly following ingestion of greasy foods, highly seasoned foods, and heavy vegetables. Pain appeared two hours after eating, relieved by food and soda. Madden said that he ate an enormous quantity at each meal and this was followed by the disturbance. The doctor made his diagnosis on October 15, but had him return each day for the next three days following this visit. His intestinal tract was examined with a fluoroscope after he had swallowed barium. No electrocardiogram was made. Within the three days Dr. Clark diagnosed the trouble as cardio spasm due to dietary indiscretion, overwork and nervous strain. He told Madden of this diagnosis. Prescribed was a general soft diet, resting habits and stopping or reduction of cigarettes. He was advised to avoid alcohol. Madden was instructed to come back to the office every two weeks for the next three months

in accordance with the doctor's regular routine in his type of case. He did return, following the first four visits on successive days, on November 15th, November 30th, December 15th, 1937, January 20th, 1938, January 25th, February 4th, February 23rd, March 29th, April 28th, and July 1st, 1938. The doctor thought that he speedily improved and considered his cardio spasm completely cured on the visit of January 25th, when he was again given barium. He was advised however, to continue his diet. On the occasion of his last visit Madden inquired of the doctor whether the ailment which he suffered would preclude him from obtaining life insurance and the doctor replied it would not. In his deposition, the doctor defined cardio spasm as a symptom and not a disease. "It is a spasm of the muscles in the upper part of the stomach not permitting foods to enter the stomach when ingested rapidly. It is usually due to dietary indiscretion, overwork, and nervous strain, as it was in this case." It was his opinion that it "should have practically no bearing on his general health unless persisted in." Clark also testified that he thought and told Madden he was in perfectly good health.

Madden was examined, for the first of the policies issued, on August 2, 1938, the application was completed that day, and the policy was issued September 10, 1938. The second examination was made January 20th, 1939, the application, a copy of which appears in the record, was then filled in and signed and the policy was issued on or about that day. The third application was completed on the occasion of the third examination, which was on April 5, and the policy was issued April 17, 1939. Dr. Crum, medical examiner for the Metropolitan at Tampa, made the examinations and filled in the medical parts of the applications. Interpreting his handwriting, he testified that the answers to the questions thereon which are here involved were "no" and "none" as alleged in defendant's answer. Usual routine examinations were made. Dr. Crum did not approve or disapprove applications from a medical standpoint and made no general recommendations one way or the other.

Charles Crown, lay underwriter in the defendant's home office testified that he approved the one of the applications which had been assigned to him for action, that no one else had anything to do with it

from an underwriting or approving standpoint and that if the applicant had set forth his treatment by Dr. Clark on the dates mentioned in that doctor's deposition, he would have referred the application to the medical division for their consideration. He would in such case, have taken no other action.

Dr. Wilson, assistant medical director of the Metropolitan, qualified as familiar with the standards, customs, and practices, and the rules and regulations of his company and those generally followed by other insurance companies in determining the acceptability, from a medical standpoint, of applicants on the basis of their applications for ordinary and intermediate policies. One of the principal duties of such medical directors is to investigate impairments or important past medical history shown by applications coming to the home office. Neither of the three applications here involved (which were exhibited to him) was referred to him or to the medical division for consideration. They are of the type passed by lay approvers since they show no physical impairments and no important past medical history. Had they been received in the medical division and shown treatments of the applicant by Dr. Clark on the dates mentioned in that doctor's deposition, they, the medical division, would have asked for a statement from Dr. Clark, requesting him to give them full particulars as to what he treated the applicant for, a diagnosis, in other words. Plaintiffs' objection to the question which elicited the testimony described in the last sentence was overruled but the same objection to the succeeding and following question and answer was sustained.

"Q. Assuming further, Doctor, on those dates as set forth in my previous question this day, Derrel D. Madden had been treated for a condition diagnosed by Dr. Clark as due to dietary indiscretion and cardio spasm; what action would you have taken with respect to each of these applications? A. I would have declined them."

Mrs. Madden testified; that her husband was never ill, was an energetic worker and a very healthy looking person; that his weight and appearance did not change during his visits to the doctor; and that except for an appendicitis operation in 1929, he had never been ill or missed any time from his work since they had been married in 1923; and that during his visits to the doctor, he went to work and came home as usual and as far as she knew he made the visits from the store. There was expert testimony from Dr. Blake for defendant, that he might have suspected an ulcer or coronary thrombosis from the history Clark gave; that coronary thrombosis often causes a pain in the epigastric region; that cardio spasm is a function based on irritation from highly seasoned or large particles of food being swallowed, and that there is no connection between cardio spasm and coronary thrombosis; there was testimony that while a condition producing cardio spasms might be temporary, usually it is a permanent condition and that nothing of a permanent condition was suggested in Mr. Madden's case. Dr. Torbett for the plaintiff, said that he would have suspected ulcer in the beginning but that he would have in the end agreed with Dr. Clark's diagnosis. He said that the fact that soda relieved the heartburn would rule out heart disease because he knew of no heart distress that would be relieved by soda or food. Dr. Crum who examined Madden for insurance testified he made a pretty thorough physical examination and found nothing wrong with him. Madden died of coronary thrombosis on June 16, 1939.

In submitting the case to the jury, the court, over the objection of the defendant, submitted as controlling in the case, whether the answers complained of as false, were made by Madden consciously, intentionally or willfully.[3]

---

[3] The charges complained of instructed the jury in substance that the words false and material as used in the law in connection with the complained of answers to the questions in the application meant that there must be not only misstatements of facts, but that they must have been consciously, intentionally and willfully made.

The charge, in connection with Question 13 as to what clinics, hospitals, etc., insured had consulted was: "such answer may not necessarily mean that his answer was false. The word 'false' is a word of double meaning: In one sense, that only is true which is conformable to the actual state of things. In that sense a statement is untrue which does not express things exactly as they are. But in another and broader sense, and in the

Appellant insists that this record establishes as matter of law that the answer "no" to Question 11, whether insured had ever had any illness or disease of the stomach or intestines, was false, but if not, it certainly establishes as matter of law that the answer "no" to Question 13, "What clinics, hospitals, physicians, healers or other practitioners, if any, not named above, have you consulted or been treated by within the past five years?", was false. In the alternative, it insists that the cause must be reversed for the error of the court in excluding the evidence of its physicians that had the insured answered the questions truthfully, the insurance would have been denied, and for the errors in submitting to the jury, upon the issue of falseness and materiality, whether the answers were made by the insured, deliberately, consciously or intentionally. •

Appellees on their part, citing cases,[4] insist that in view of the illegibility of the marks on the application and of the fact that it took the oral testimony of the examining physician to give them meaning, it may not be said that there is proof that the insured made any misstatements. In support, they point out that on the photostats of the applications, which are here before us, in the spaces provided for "yes" or "no", in answer to Questions 11 and 13, neither the word "yes" nor "no", as ordinarily written, may be read. Instead there appear only a kind of shorthand or lines resembling an M or a W, and the only way "no" could be made out of the character was by putting Dr. Crum on to testify that the answers were "no" and "none" and that the character was written by him as "no" and "none".

It is their position further that if the answers are to be read as "no" and "none", the judgment may not be reversed because, (a) of the exclusion of the medical examiner's opinion, that he would have rejected the risk, both because the ruling was not error and if error, was harmless, or (b) of the refusal of the motion for a directed verdict or the giving of the charges complained of, because the real question at issue here is not whether the answers were made but whether there was a conscious and willful intent to deceive, for unless there was, the answers could not be deemed false or material and the jury has decided the issue of willfullness in appellees' favor.

While we cannot agree with appellees that the exclusion of the examiner's opinion was not error, we do agree with them that the error was harmless, for the opinion, if admitted, would not be conclusive of, but only evidentiary as to, .the materiality of the answers,[5] and the evidence which was admitted, left in no doubt

---

sense involved in this case, the word 'false' means intentionally or willfully untrue.

"The burden of proving that the answers Mr. Madden gave were false is upon the defendant, and unless you find from a preponderance of the evidence in this case that Mr. Madden in applying for the. policies of insurance involved in this case consciously, intentionally or willfully answered these questions falsely, then your verdict should be for the plaintiff."

The charge in connection with Question 11 was: "The Court has already instructed you as to the meaning and import of the word 'false' as used in the sense employed by the defendant, that is, that the answers in order to be false must have been intentionally or willfully untrue.

"This court further charges. you that in order for the defenses or one of them to avail the defendant, it must be shown by the defendant by a fair preponderance of the evidence that the answers which the defendant claims to have been false were false, and that they related to material facts which might reasonably have affected or influenced the judgment of the de-

fendant whether it would issue the policies applied for and unless you believe from the evidence in this case that Mr. Madden consciously or intentionally or willfully made untrue answers in the respects contended for by the defendant, and the fact of Mr. Madden having consulted Dr. Clark and of his complaint being diagnosed as cardio spasm might reasonably have influenced the company to decline the insurance applied for, then the Court instructs you that the fact of his consulting Dr. Clark and being diagnosed as having cardio spasm would not be material and the plaintiff is entitled to recover."

4 Stanyan v. Security Mutual Life Ins. Co., 91 Vt. 83, 99 A. 417, L.R.A.1917, c. 350; Manhattan Life Ins. Co. v. Willis & Bros., 5 Cir., 60 F. 236; Fisher v. Missouri State Life Ins. Co., 97 Fla. 512, 121 So. 799; New York Life Ins. Co. v. McCarthy, 5 Cir., 22 F.2d 241.

5 Pacific Mutual Life Ins. Co. v. Johnson, 5 Cir., 74 F.2d 367, at 371; First Trust Company of St. Paul v. Kansas City Life Ins. Co., 8 Cir., 79 F.2d 48, at 53.

that the company regarded the answers as material. We cannot agree with appellees though that it was not fully proven that the insured gave the answers "no" and "none" to Questions 11 and 13. None of the cases they cite are in point. They merely decided that proof must be made that the questions were affirmatively answered, not passed without answering, and that certain characters in the application, in one of the cases a check mark, could not, standing alone, be taken as an affirmative answer. In none of the cases was the person, who wrote the answers down, called. All of them were submitted on the applications alone. Here, the medical examiner who filled out the applications and wrote the answers down testified positively that the questions were answered "no" and "none" and that the characters he wrote down were written to evidence "no" and "none", and it may not be doubted that they could be read as "no" and "none" and could not be read as "yes". What is important here is what answers were given by the insured to the questions in the applications and what was written down, and no better evidence of that can be had than the testimony of the scrivener. The case is identical with those which arise where the writer is called upon to read his own handwriting partly or wholly illegible to others.

Finally we cannot agree, as to the answer to Question 13, with appellees' claim that "the real question at issue was whether there was a conscious and willful intent to deceive and that unless there was the answers could not be regarded either as false or material, and that the jury having found that there was no willful intent to deceive, the judgment must be affirmed." We cannot agree with this both because it confuses the issues of materiality and falsity and because it closes the eyes to the fact that the evidence, as to both the materiality and the falsity of this answer, was conclusive.

The answer sought to be elicited by the question was an answer of fact and not of opinion. If it was not material, its falsity was wholly unimportant,[6] but if, as here, it was material as matter of law, and, as here, the answer was, and was known to be, untrue, its giving prevented recovery on the policy without regard to whether the answer was given with a conscious, fraudulent purpose to deceive.[7] This is not to say that false is not sometimes a word of double meaning as in connection with Question and Answer 11, calling for an opinion whether applicant had had any ailment or disease of the stomach or intestines. In such cases whether the answers were given in good faith, that is, whether they expressed the honest opinion of the answerer or were dishonest opinions given with intent to deceive, is material. Moulor v. American Life Ins. Co., 111 U.S. 335, 4 S.Ct. 466, 28 L.Ed. 447; North American Accident Life Ins. Co. v. Tebbs, 10 Cir., 107 F.2d 853, and cases cited in notes preceding. Cf. Sentinel Life Ins. Co. v. Blackmer, 10 Cir., 77 F.2d 347; Pilot Ins. Co. v. Dickinson, 4 Cir., 93 F.2d 765, where the statement was false in the sense that it was untrue, but it was not known to the applicant to be false. In view of the prognosis, diagnosis and the ultimate pronouncement of applicant's physician on the case, we think there was an issue of fact upon whether the opinion given in answer to Question 11 was false.

Nor is it to say that in cases of misstatements of fact where there is a dispute of fact as to whether the misstatements were knowingly made or were the result of oversight or inadvertence, a jury issue could not be made out. But it is to say as to Question 13, the purpose of which was to reveal medical consultations and treatments of the applicant, so that the insurer might have the benefit of this information as a basis for further inquiries in determining his insurability; that it was in law material; that the an-

6 Geer v. Union Mutual Life Ins. Co., 273 N.Y. 261, 7 N.E.2d 125; 37 C.J. 464; Kaplan v. Manhattan Life Ins., 71 App. D.C. 250, 109 F.2d 463; Franklin Life Ins. Co. v. Critz, 5 Cir., 109 F.2d 417.

7 New York Life Ins. Co. v. McCarthy, 5 Cir., 22 F.2d 241; Ætna Life Ins. Co. v. Bolding, 5 Cir., 57 F.2d 626; Pacific Mutual Life Ins. Co. v. Cunningham, 5 Cir., 65 F.2d 909; Jefferson Standard Life Ins. Co. v. Stevenson, 5 Cir., 70 F.2d 72; Geer v. Union Mutual Life Ins. Co., 273 N.Y. 261, 7 N.E.2d 125; Ginsburg v. Pacific Mutual Life Ins. Co., 2 Cir., 89 F.2d 158; Winer v. New York Life Ins. Co., 143 Fla. 652, 197 So. 487; Thompson v. New York Life Ins. Co., 143 Fla. 534, 197 So. 111; Jefferson Standard Life Ins. Co. v. Clemmer, 4 Cir., 79 F.2d 724, 103 A.L.R. 171; New York Life Ins. Co. v. McCurdy, 10 Cir., 106 F.2d 181; Wharton v. Ætna Life Ins. Co., 8 Cir., 48 F.2d 37; New York Life v. Odom, 5 Cir., 93 F.2d 641.

swer to it, if given truthfully, was likewise material; that the evidence admits of no other conclusion than that, whether or not fraudulently intended, it was deliberately and knowingly made; and that because of this misrepresentation, the judgment may not stand. Columbian National Life Ins. v. Rodgers, 10 Cir., 93 F. 2d 740, and authorities cited in Note 7, supra.

This is settled law in New York, where it is claimed that one of the policies became a contract, and in Florida, from which this case comes. It has been repeatedly so decided by this court. It is therefore unnecessary for us to determine whether, as appellees contend, all of the contracts were Florida contracts and governed by Florida laws, or, as appellant contends, one of them was a New York contract and governed by that law.

The judgment will be reversed and remanded for further and not inconsistent proceedings.

Reversed and remanded.