NEW YORK LIFE INSURANCE CO. v. NELLIE T. KINCAID

165 So. 553
Opinion Filed December 26, 1935.
Rehearing Denied February 6, 1936.

284

*Doggett, McCollum, Howell & Doggett,* for Plaintiff in Error;

TERRELL, J.—On June 30, 1920, New York Life Insurance Company issued two policies of insurance in the sum of $5,000 each on the life of James Kincaid of Orlando, Florida, payable to his wife, Nellie T. Kincaid, as bene-

ficiary. The insured paid all premiums on these policies as they matured until June 30, 1929. In June, 1927, he borrowed $880 on each policy which had not been repaid when his last premium matured. He was, therefore, indebted to the New York Life Insurance Company at that time for a quarterly premium of $66.30 (Payment of premiums having been changed to quarterly basis) and one year's interest or $52.80 on the loan, being a total of $119.10 on each policy. At the same time the Company owed Kincaid a dividend for 1928 of $60.35 and a dividend for 1929 of $62.50, or total dividends of $122.35 on each policy.

Kincaid did not pay his premiums nor the interest on his loan when they matured or within the thirty days' grace allowed by the policy, so on August 6, following default, the Company notified him that it had lapsed both policies. August 8, two days after lapse, Kincaid filed his applications to reinstate both policies. The sum due the Company for premiums and interest on loans was remitted with the applications and after considerable correspondence between the Company and Kincaid and an investigation by the Company of Kincaid's insurability, both policies were, on November 12, 1929, reinstated, and the premiums marked paid to December 30, 1929, the reinstatements having been approved as of June 30, 1929.

All premiums were then regularly paid until March 30, 1931, but on February 19 of that year Kincaid applied for permanent disability benefits, as provided in the policy and for which an extra premium charge of $12.75 per annum was required. The policies also provided that when total disability benefits were allowed all premiums would be waived beginning with the ensuing anniversary of the policy.

On March 9, 1931, the Company notified Kincaid and his wife, Nellie T. Kincaid, that it had elected to and had

as of June 30, 1929, rescinded the reinstatement of both his policies, because of his (Kincaid's) failure to disclose in his applications for reinstatement material facts as to his insurability. The policies as reinstated had been in force approximately twenty months when the reinstatement was rescinded, so in the letter of the Company notifying Kincaid of the rescission of the reinstatement it tendered him the sum of $489.75, being the amount paid by him on premiums and interest on loans from the date of lapse to the date of rescission of the reinstatement.

Kincaid promptly applied for reconsideration of the order rescinding the reinstatement. Much correspondence ensued but on June 12, 1931, the Company notified him that the matter was closed and that its order rescinding the reinstated policies was final and effective as of June 3, 1929. Kincaid, on May 27, 1931, cashed the check for $489.75 sent him by the Company in return of premiums and interest on loan, and died September 18, 1931.

Nellie T. Kincaid then brought a suit in equity against the New York Life Insurance Company in the United States District Court for the Southern District of Florida, praying for an accounting and for other relief. Identical suits were brought on each policy, the facts being the same. Both suits were on appeal dismissed without prejudice because they were not of equitable cognizance. Kincaid v. New York Life Ins. Co., 66 Fed. (2d) 268.

In September, 1933, this action was instituted in the Circuit Court of Orange County to recover the proceeds of the policies. Declaration was filed and issues made as to each policy but at the trial both actions were consolidated, the facts and issues being identical. There was a verdict and judgment for the plaintiff in the sum of $3,000 and costs, a new trial was denied, and final judgment was entered.

The present writ of error was prosecuted to the final judgment.

The errors brought up for solution are numerous, most of which are predicated on rulings as to pleadings and evidence and refusal to grant a new trial. The pleadings are involved. The briefs are very clear and helpful. The record has been examined with great care but we treat only those questions essential to the disposition of the cause. Under the conclusion we reach the others become immaterial.

The vital questions in this case may be stated as follows: Whether or not the Company erroneously lapsed Kincaid's policies as of June 30, 1929; whether he knowingly misrepresented his physical condition, that is to say his insurability, when he applied for reinstatement of them; and whether or not his acceptance of and cashing the check for $489.75 was in full settlement of all claims held by him against the Company.

In our view question one must be answered in the negative. Kincaid had carried these policies for nine years. They provided that dividends, consisting of an annual apportionment of the Company's surplus earnings, should be made to the policy holders after premiums were paid for two years, which by option in the policy could be applied on the payment of premiums or withdrawn in cash. The New York Life Insurance Company was, therefore, a mutual company and Kincaid was more than a policyholder. He was a stockholder in the company.

Section Four of the policies provides for their surrender after three full years' premiums have been paid if default in payment of premiums occurs, and defines three options that may be taken by the insured in lieu of continuing the policy if availed of at the end of any insurance year or within

three months after default in payment of premium. We are concerned primarily with option three in this case. In paragraph two of option three cash surrender value is defined with particularity and the method of its computation set out in detail. A table of guaranteed surrender values computed as specified is carried in the face of each policy.

Options one and two carry distinct privileges for the insured which we will not discuss because not pertinent to this case. Paragraph one of option three provides that if the policy be not surrendered for cash or paid up insurance within three months after default in payment of premiums, its cash surrender at date of default, less the amount of any indebtedness, shall automatically purchase continued insurance from the date of default for the face of the policy plus any dividend additions and less any indebtedness to the Company. The continued insurance shall be without future participation and without the right to loans, cash surrender values, disability, or double indemnity benefits.

These options were incorporated in the policies for the benefit of the insured to protect him should his financial condition become such that he was no longer able to carry or should he elect for other reasons to surrender them. Insurance like other contracts should be executed according to their express intent. Under paragraph one of option three as just quoted the Company should not have lapsed Kincaid's policies when he failed to pay at maturity his June, 1929, premiums. He should have been carried for three months and if he failed to surrender his policies and accept options one or two the Company was mandatorily required to credit him with continued insurance from the date of default for the face of the policies as long as their cash surrender value, plus due dividends, less loans, would carry them. Such insurance being without participation in ben-

efits amounted to nothing more than term insurance. The policies required this without any suggestion from the insured.

The Company did not give Kincaid a chance to elect under options one or two and if he failed to do so invoke option three in his behalf as the policies required. It promptly lapsed the policies and Kincaid as promptly applied for reinstatement which was granted. He paid his premiums as they matured and applied for disability benefits in February, 1931. The Company responded to this request by again rescinding his policies as of June 30, 1929, and invoked the provisions of option three in his behalf. The Company at this time took the position that the cash surrender value of the policies as of June 30, 1929, less advances thereon, was sufficient to purchase term insurance for one year and 204 days, carrying them to January 20, 1931, which having expired the policies had lapsed when Kincaid applied for total disability. In its computation of cash surrender value the Company did not include the June, 1928, and the June, 1929, dividends.

Kincaid borrowed $880 on each policy in June, 1927, at 6 per cent. When he defaulted in payment of premiums the surrender value of each policy, computed as required by option three, was $1075.00, not including dividends. One year's interest on his loan was then due, making the full amount of $932.80 against the cash surrender value. The net surrender value of the policies was, therefore, $1075.00 less $932.80 or $142.20. To this amount should have been added the June dividends of 1928 and 1929, aggregating $122.05 to apply on term insurance which was ample to carry the policies beyond Kincaid's death. The Company was, consequently, in error in not including the dividends in the cash surrender value. We do not overlook the fact

that the dividends had been withdrawn at the time the Company invoked option three but they were due and available on the date of default when cash surrender value was computed. The net value of the policies would have been $4067.20 if option three had been regularly invoked.

The Company having voluntarily frustrated the orderly course of the policies is bound by the consequences to Kincaid. The limit on options one, two, and three expired in three months. Kincaid applied for reinstatement which was considered and his policies restored to their former status. All premiums were paid as they matured until March, 1931. The March, 1931, premiums were to all intents and purposes paid because they were tendered and refused. The June, 1931, premiums were not tendered but if Kincaid was totally disabled they were not due because waived by the terms of the policy. He died September 18, 1931, before the next premiums were due.

If the Company had bided its time for three months when the June, 1929, premiums matured the policy would have "automatically" taken care of itself and Kincaid would have been vested with term insurance for the face of his policies, less loans, at the time of his death. The Company admits that Kincaid had cash surrender value sufficient to carry his insurance one year, 204 days, from June 30, 1929, so there was no earthly reason for lapsing it at that time. In fact this was no time to talk about lapse since the policies carried unequivocal provisions as to the course to be pursued. It may be contended that the lapse was subject to the exercise of the options by the insured, which must be true, but Kincaid was not so advised and his application for restoration was considered and approved after the expiration of the time in which he could exercise option three.

While there was no ground for lapsing the policies, there

certainly could have been nothing to inhibit the Company from correcting its error by reinstating them, but when this was done on mutual terms the old status of the policies was restored and the right to surrender and exercise the cash surrender options was waived unless the insured defaulted or called them at some future anniversary. When reinstated Kincaid in effect surrendered paid up term insurance for the rest of his life. After more than eighteen months the Company now contends that his policies should be rescinded as of June 30, 1929, on the basis of his book account with it after withdrawing his dividends which at the time he requested be used to pay his premiums. It will not be permitted to do this. If the restoration was regular and in good faith it will not be permitted to be rescinded, but if for good reason this should be permitted rescission must be on the basis of the book account as of June 30, 1929. The Company cannot rescind as of one date and base such rescission on a book account date, different and favorable to it, when its conduct was responsible for the condition created.

It is accordingly our view that Kincaid's policies did not lapse June 30, 1929, that the Company was in error in lapsing them because they had been in force long enough to be covered by Section Four which provided for their surrender and the acceptance of cash surrender value by the insured when he failed to pay his premiums. We are further of the view that Kincaid had a valuable equity in the policies by virtue of Section Four notwithstanding the lapse which he cannot now be deprived of without his consent for value even if there should be found good cause to rescind the reinstated policies. If such course be found under the facts of this case it must be on the basis of Kincaid's book account with the Company June 30, 1929.

We come next to the question of whether or not Kincaid knowingly misrepresented his physical condition, that is to say, his insurability, when he applied for reinstatement of his policies.

Kincaid's policies were rescinded August 6, 1929, for failure to pay premiums due June 30, of that year. Two days after rescission he applied to have them reinstated. In answer to a questionnaire sent him in support of his application to reinstate he certified that: (1) He was then to the best of his knowledge and belief in the same condition of health that he was when the policy was issued; (2) That within the last two years he had had no illness, disease, or bodily injuries, nor had he consulted or been treated by a physician except by Dr. W. Osenback on July 24, 1929, for hemorrhoids; (3) That no company had examined him in the last twenty-four months for insurance. He certified the foregoing answers to be complete and true and that the Company might rely and act upon them. After a full statement from Dr. Osenback with reference to the treatment for hemorrhoids the Company reinstated both policies.

About twenty months later when Kincaid made application for total disability benefits, the Company made a further investigation of his answers to the questionnaire in support of his application for reinstatement and found that he had been treated by Dr. Osenback in August, 1927, April and May, 1928, and in June and July, 1929, for abscesses on the neck and chest. He (Dr. Osenback) also removed a cyst and wart from his face. It was also developed by this investigation that Kincaid during the spring of 1920 had consulted Dr. Fogarty and Dr. Christ. On the result of this testimony the Company rescinded the reinstated policies, refused a reconsideration of the rescission, and re-

mitted Kincaid all premiums paid between the first and second rescission.

The Company did not rely on Kincaid's answers to the questionnaire but made additional investigation before reinstating the policies. All the evidence relied on to cancel the reinstated policies were present and available at the time of reinstatement. It is now contended that Kincaid knowingly made misrepresentations to the Company in that he did not disclose all his visits to Dr. Osenback and what he was treated for each time during the two year period covered by the questionnaire and that his policies would not have been reinstated if the undisclosed visits and what they revealed had been known to the Company. The issue of whether or not Kincaid knowingly made misrepresentations to the Company was fully developed by plea, replication, rejoinder, and sur-rejoinder, which we have examined but do not deem necessary to enlarge on here.

Even if he failed to make a full disclosure with reference to his insurability it does not necessarily vitiate his reinstatement. The test is whether or not his answers to the questionnaire were made in good faith and, as said in the preceding paragraph, this question was squarely presented by the pleadings and was for the jury to determine. Their verdict finds ample support in the evidence and should not be disturbed. Mutual Life Ins. Co. of New York v. Hurni Packing Co., 260 Fed. 641, text 646; New York Life Ins. Co. v. McCarthy, 22 Fed. (2d) 241; Mouler v. Am. Life Ins. Co., 111 U. S. 335, 4 Sup. Ct. 466, 28 L. Ed. 447; Rose's Notes, Rev. Ed. Supplement to Vol. 2, page 783; also Vol. 12, pages 544, 545; Couch on Insurance.

The evidence of Dr. Fogarty and Dr. Christ, insofar as it affects the issue in this case now or at the time of the Company's refusal to reinstate the policies after the second

rescission, is of no consequence whatever because the consultation with them was subsequent to the first reinstatement. As to Dr. Osenback's testimony it now develops after Kincaid's death that he (Osenback) suspicioned that he (Kincaid) had incipient cancer at the time he examined him for boils in 1928 but that this was not at all certain and no such suspicion was communicated to Kincaid at any time. It is further shown that up to the time Kincaid applied for total disability benefits he was going about his daily work of building houses and selling real estate, following the recreation of a normal man, and had no reason to suppose that he was afflicted with a serious malady. True he had boils like Job and a wart like Cromwell but such excrescences are by no means an impediment to securing insurance and in the great majority of cases are not taken seriously. The decided weight of the evidence is to the effect that Kincaid did not give them more than passing thought. Dr. Osenback and Dr. Harmes testified that infected lymphatic glands causing boils on the neck and chest as occurred with Kincaid would ordinarily not impede one from going about his business and bearing the appearance of good health. A test for cancer reacted in the negative and both Dr. Osenback and Dr. Harmes testified that his trouble was not necessarily serious at the time. Boils are of such common occurrence that it is possible Kincaid attached no importance to them or overlooked the fact that he had been treated for them. At any rate, on the evidence presented the jury was warranted in resolving any doubt on this point in his favor. In fact in view of Kincaid's equity in the policies and the facts as developed he was in position to enforce their reinstatement.

Much more might be said on this question but after all it was one of pure fact for the jury to determine and their

verdict is a reasonable deduction from the evidence. Situated as Kincaid was it would require positive and conclusive showing that he knowingly misrepresented his insurability when he applied to reinstate his policies. The burden was on the Company to do this and failing to do so the foundation for the rescission of the reinstatement falls. The foundation for the second rescission being without avail we are driven to the conclusion that the rescission was ineffective and having held the first reinstatement binding unless accomplished through fraud it follows that both policies were in effect when Kincaid applied for disability benefits. Kincaid v. New York Life Ins. Co., 66 Fed. (2d) 268, *supra*.

No intentional deception having been conclusively shown to effectuate the reinstatement of Kincaid's policies we think that we would be warranted in holding that the Company is now estopped to raise that question. It was raised more than eighteen months after reinstatement during which time seven premiums were paid, the options in Section Four for the benefit of the insured were waived, he had withdrawn dividends that he had previously designated for payment of premiums, making a material difference in his extended insurance, and judging from the evidence in support of his application for disability benefits his insurability had materially changed. It would be difficult to conceive a more appropriate case to invoke the doctrine of estoppel.

Did the fact that Kincaid cashed the check sent him by the Company in return for premiums and interest on loan paid between the first and second rescission amount to a settlement in full of all claim on the policies and bar Mrs. Kincaid from recovery on them.

Mrs. Kincaid, being no more than the beneficiary of her husband, had no vested right in the policies, as the privi-

lege was reserved to change beneficiaries at any time. · She is, therefore, bound by what Kincaid did. On this point it was held in Kincaid v. New York Life Insurance Co., *supra,* that in taking this money back June 12, 1931, he must have taken it because of consent to rescind the reinstatement. But a rescission of the reinstatement did not rescind the policy, which was a distinct contract made nine years before, unless the terms upon which the money was offered made it more clearly a settlement in full of all demands than now appears. The policy contract still stood on its merits, but unaided by the rescinded contract of reinstatement or by the returned premiums.

In making this enunciation the Court was ruling on a motion to dismiss the bill and was not in possession of the facts as we are in this case. It is shown that the check sent Kincaid represented no money except that paid by him on premiums and interest subsequent to the rescission of his policies, it is not shown that it was accepted in full satisfaction of his claim against the Company and in fact is conclusively shown not to have been, no release or receipt in full was signed, and the Company did not demand nor did Kincaid return the policies. The check was not cashed for more than two months after its receipt, during which time and later Kincaid was urging the Company to rescind its cancellation. Kincaid and the Company were not at this time treating as equals and at arms' length. The Company was aggressive and dealt summarily with Kincaid who was more than a mere policyholder; he was a stockholder in the Company and had acquired rights that precluded any such *ex parte* treatment. Kincaid was *in extremis,* had applied for total disability benefits, and died a few months later. We do not condone the ignorance and credulity exemplified by him on this point but all things considered he was under

a species of duress and it would be a flagrant miscarriage of justice to permit that to deprive him of his right in this case. The Company can, therefore, claim no advantage from the fact that Kincaid cashed its check. *Couch Cyclopedia of Insurance Law,* Vol. 6, page 5126.

An insurance company is well within its right in imposing rigid restrictions to be complied with as a prerequisite to those seeking its protection but when one meets these restrictions and enters into contract for its benefits and pays for them for a period of years he attains a different status. He acquires rights in other words, that the law will not permit to be taken from him without just cause. The very purpose of life insurance is to provide a sanctuary from the rigors and uncertainties of old age, unemployment, and other disabilities that eventually incumber all flesh, and to provide some assurance that those dependent on the insured will at least have bread when he is gone. For this reason such contracts should be scrupulously observed.

The rule is academic that when the terms of a policy are of doubtful meaning, that construction most favorable to the insured should be adopted. It is also academic that failure by the one insured to disclose conditions material to the risk of which he is aware make the contract voidable at the insurer's option. This principle is well settled and is approved by this Court. In our consideration of the case at bar we have not overlooked this rule but have in all respects been moved by it. The supplement to this rule is that when one has carried a policy of insurance long enough to acquire equities under its terms and the company, as in this case, frustrates the maturity of said equities it will not later be permitted to construe the policy in a manner to deprive the insured of them.

From the foregoing it follows that Kincaid's policies were

in force at his death. The evidence shows that he was entitled to disability benefits when he applied for them. His premiums were paid to March, 1931, and this one was tendered and refused. His June premiums were waived by the policy and he died before the next ones were due. His beneficiary should now be permitted to pay his March, 1931, premiums. She is entitled to recover the face of the policies, plus dividends, plus disability benefits. From this amount should be deducted the loan, including interest due thereon, and the sum of $489.75 sent Kincaid when his policies were rescinded the second time.

This we conceive to be the proceeds of the policies which the declaration was designed to recover and is what the evidence shows to be recoverable. The declaration is not clear on this theory and it is quite evident that the jury was confused as to the issues they were to decide as the verdict was not in harmony with this theory of the case. For this reason the judgment is reversed with directions to permit the pleadings to be amended and enter judgment to comport with the views expressed in this opinion.

We have examined the other assignments and we are convinced that errors in procedure were committed but they become unimportant in view of the conclusion reached so a discussion of them would serve no useful purpose.

Reversed with directions.

WHITFIELD, C. J., and BROWN, BUFORD and DAVIS, J. J., concur.

### ON PETITION FOR REHEARING

PER CURIAM.—The Petition for Rehearing in this cause has been examined with care. On reconsideration of the record and briefs of counsel in the light of the petition we have reached the opinion that the second and third para-

300

graphs from the conclusion on the last page in our former opinion should be modified as follows:

From the foregoing it follows that Kincaid's policies were in force at the time of his death. The amount of the verdict and judgment are shown to have been within the amount his beneficiary was entitled to recover as laid in the declaration so the judgment below is affirmed. In all other respects the main opinion is reaffirmed.

Rehearing denied.

WHITFIELD, C. J., and TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.