### PAN-AMERICAN LIFE INS. CO. v. FOWLER.

### No. 12484.

United States Court of Appeals
Fifth Circuit.

April 25, 1949.

Wm. H. Watson, of Pensacola, Fla., for appellant.

Bert H. Lane, of Pensacola, Fla., for appellee.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

McCORD, Circuit Judge.

This suit was brought by Pan-American Life Insurance Company for cancellation of two policies of insurance on the life of William C. Fowler, and payable at death to his wife, Hertha C. Fowler. Both policies were dated July 16, 1946, and insured Fowler in the amount of $5,000 each. They were issued on written application dated February 20, 1946, and medical examination of July 8, 1946. At the time of Fowler's death on October 17, 1947, all premiums due on the two policies had been paid, and they were presumably in full force and effect.

On January 17, 1948, after the policies had matured and become payable upon the death of the insured, plaintiff filed its complaint setting up the issuance of the policies, a provision of the insurance application that the statements made therein were complete and true, and the further provision that the policies were not to become effective until delivered while the insured was in good health. It is alleged that Fowler, in answer to certain questions propounded in the medical examination part of his insurance application, had made false representations as to matters material to the risk, with knowledge of their falsity and with intent to deceive, and by amendment, that he was not in good health at the time the policies were delivered. Specifically, the complaint charged that he failed to disclose, in answer to questions in his application, (1) that he had suffered from and had been treated for ulcer of the stomach; (2) that he had consulted one Dr. R. P. Stritzinger for stomach ulcer within five years before his application for the insurance; and (3) that he had been

X-rayed for treatment or diagnostic purposes at that time. Plaintiff offered to return the premiums paid with interest thereon, and sought a decree cancelling the policies and extinguishing its liability thereunder, because of the alleged fraud in the application.

Defendant, in answer, admitted the issuance of the policies and the provisions alleged, but substantially denied each and every allegation as to the misrepresentation and fraud charged. By way of counterclaim, she sought to establish plaintiff's liability on the policies, and a trial by jury resulted in a verdict and judgment in her favor for the full amount due thereon, together with costs, interest, and attorneys' fees.

The question presented is whether plaintiff is entitled to cancel the policies and avoid liability thereunder, either because of the alleged false and fraudulent answers in the insurance application, or on the theory that Fowler was not in good health at the time the policies were delivered.

The evidence reveals that the insured first consulted a Dr. Stritzinger with an abdominal complaint in November, 1941, and that this physician then diagnosed his condition as ulcer of the stomach, and prescribed for him a milk and cream diet. Fowler apparently did not improve, and later found it necessary to consult another doctor in New Orleans, who diagnosed his complaint as chronic appendicitis. Thereupon Fowler abandoned the ulcer diet originally prescribed, and prevailed upon Dr. Stritzinger to operate upon him for appendicitis, which Dr. Stritzinger consented to do. From the date of his appendectomy, in December, 1942, until some time after the policies were issued in July, 1946, it is practically without dispute that Fowler did not have any recurrence of his stomach ailment and complaint, received no further medical treatment for such illness, and for aught that appeared, was in comparatively sound health.

In July, 1946, in the medical examination portion of his application for the insurance, Fowler was asked whether he had ever had, or had ever been treated for appendicitis, ulcer of the stomach or duodenum, jaundice, gallstones, and many other ailments, and he replied, "Appendectomy 1943 for acute appendicitis 2nd attack —Hosp. 10 days—no sequaelae." In answer to another question, as to what illnesses and complaints for which he had consulted a physician within the past five years, Fowler answered, "Appendectomy above. Fracture vertebra 1945". In still another answer, when questioned as to whether he had ever been X-rayed for treatment or diagnostic purposes, he replied "Yes. Fracture 1945, 3rd and 4th cervical vertebrae." Fowler admittedly did not indicate in any of the above answers the fact that he had originally received a diagnosis of ulcer of the stomach from Dr. Stritzinger in November, 1941, and had been X-rayed for this condition at that time.

Much of the medical testimony is in conflict. It reveals, however, that the doctors who treated Fowler during the three or four years prior to the issuance of the policies in question were not at all sure of their various diagnoses of his condition. Dr. Click, who treated Fowler in his last illness, indicates in his testimony that the symtoms for acute gastritis, gall bladder trouble, stomach ulcer, and sometimes appendicitis, are frequently so deceptively similar as to cause confusion among the members of the medical profession. Dr. Click further admitted that shortly before Fowler's death he diagnosed his condition as acute gastritis, and did not know that he was actually suffering from ulcer of the stomach until after the operation which he performed on Fowler only five days before his death.[1] Moreover, there was evidence that in September, 1946, shortly after the policies were issued and over a year before the insured's death, that Fowler showed no sign of ulcer. In any event, Dr. R. C. Vose, associate medical director for plaintiff, testified that even had plaintiff been fully informed of Fowler's prior medical

[1] Dr. Click performed an emergency operation on the insured, Fowler, on October 12, 1947, at which time he found a ruptured ulcer of the lower pylorus portion of the stomach. Fowler's death five days later was apparently caused by a combination of peritonitis and pneumonia.

history at the time of his insurance application, it would in all probability have issued the policies anyway at the standard rate.[2]

Counsel for both parties appear to be in agreement on the law applicable to this type of case. It is settled clearly to the effect that in an application for insurance any false representation as to a material fact, made with knowledge of its falsity, with intent to deceive, and acted on by the issuance of the policy, voids the insurance. American Insurance Co. of Newark v. Robinson, 120 Fla. 674, 163 So. 17, 20; Stipcich v. Metropolitan Ins. Co., 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895; Mutual Life Ins. Co. v. Hilton-Green, 241 U.S. 613, 622, 36 S.Ct. 676, 60 L.Ed. 1202.

We are of opinion there is substantial evidence from which the jury might reasonably have found that the representations made by the insured were neither false nor fraudulent, but that they were submitted in good faith in the belief they constituted the whole truth concerning the information sought. In view of the testimony as to the conflicting advice which the insured received from his doctors, it was open to the jury to find that Fowler actually never believed he had suffered from ulcer of the stomach; that Dr. Stritzinger, in November, 1941, had erroneously diagnosed his condition as stomach ulcer when, in fact, he was then suffering from chronic appendicitis. It is hardly conceivable that Fowler would have then abandoned his ulcer diet and insisted upon an operation for appendicitis, or even that Dr. Stritzinger would have performed it, if both had not been in some measure convinced that an appendectomy was really the remedy to relieve his symptoms and effect a cure. Furthermore, the fact that insured thereafter enjoyed a four year period of almost complete surcease from his abdominal difficulties, and showed no evidence of ulcer, lends credence and support to the inference he may never have suffered from this ailment until after the policies were delivered. In any event, if he actually did have stomach ulcer at the time of Dr. Stritzinger's original diagnosis in 1941, the jury was warranted in finding that his ignorance of the fact might well have contributed to and hastened his death. As for the insured's failure to disclose the fact that he had been X-rayed in connection with his treatment for a supposed ulcer condition in 1941, it was shown that Fowler may justifiably have been under the impression that the machine used was a fluoroscope, and not X-ray.[3]

Although the question of whether the policies were delivered during the good health of the insured was not submitted to the jury and does not appear to be properly before us, we consider it sufficient to observe that there was evidence that no ulcer existed in August, 1946, shortly before the policies were delivered, and from this testimony the jury could have inferred that Fowler was then in good health, within the meaning of the policy. In any event, plaintiff requested no charge on the issue of good health of the insured at the time of delivery of the policies, and preserved no exceptions to the failure of the court to submit this issue to the jury, so that the court may not now be put in error in this regard.

The policies here in question are of the endowment type, and among the most expensive forms of insurance sold. If the insured had intended to deceive the plaintiff, he could have purchased approximately four times the insurance coverage in other forms of insurance for practically the same amount of premiums paid.

---

[2] Q. "If you had had this information which has been provided here, that Mr. Fowler was treated for ulcer from November of 1941 until December of 1942, when his appendix was removed, and that he was not treated for ulcer subsequent to 1942, after his appendix was removed and your policy was issued would you not have issued that policy at the standard rate? * * * A. We most probably would have issued it at the standard rate."

[3] When Dr. Stritzinger suspected that Fowler had a stomach ulcer in November, 1941, he referred him to Dr. J. J. McGuire, a radiologist, for what was called a "G. I. (gastro-intestinal) Series." The testimony reveals that this treatment was accomplished through a combined use of the fluoroscope and X-ray.

The charge of the court was full and fair and substantially covered every important phase of the case. It becomes manifest that factual issues are presented by the evidence, and that these issues were for the consideration of the jury. *Gulf Life Ins. Co. v. Shelton,* 155 Fla. 586, 21 So.2d 39; *New York Life Ins. Co. v. Kincaid,* 122 Fla. 283, 165 So. 553; *Madden v. Metropolitan Life Ins. Co.,* 5 Cir., 138 F.2d 708, 151 A.L.R. 984; *Metropolitan Life Ins. Co. v. Poole,* 147 Fla. 686, 3 So.2d 386.

We find no reversible error in the record, and the judgment is accordingly affirmed.