**RELIANCE LIFE INS. CO. OF PITTS-
BURGH v. EVERGLADES DISCOUNT
CO. et al.**

**No. 14258.**

United States Court of Appeals
Fifth Circuit.

June 12, 1953.

James A. Dixon, Miami, Fla., Dixon, De-Jarnette & Bradford, Miami, Fla., of counsel, for appellant.

Miller, Miller, & Hewitt, West Palm Beach, Fla., and Wareing T. Miller, of West Palm Beach, Fla., for American Nat. Bank & Trust Co. of Mobile.

Clarence J. Brown, Jr., Miami, Fla., Elwyn L. Middleton, West Palm Beach, Fla., Gus Feuer, Miami, Fla., Morehead, Forrest, Brown & Gotthardt, Miami, Fla., Burns, Middleton & Rogers, West Palm Beach, Fla., of counsel, for other appellees.

Before BORAH, RUSSELL and STRUM, Circuit Judges.

STRUM, Circuit Judge.

This suit was instituted by appellant, Reliance Life Insurance Company, to rescind a life insurance policy because of alleged material misrepresentations, knowingly made, in the application for the policy. Named as defendants were Everglades Discount Company, beneficiary of the policy, also a bank to whom the policy had been assigned to secure a loan, and the administratrix of the insured's estate, the insured having died prior to suit.

Asserting that the application was made in good faith, and without conscious intent to deceive, the beneficiary and the assignee bank cross-claimed for the amount of the policy. After two jury trials, the first jury having disagreed, there was a verdict for the cross-plaintiffs (original defendants), upon which judgment was entered, and this appeal followed. The trial judge submitted all issues to the jury, including the issues of misrepresentation and intent to deceive. There was a general verdict for cross-plaintiffs, without special findings.

The policy in question was applied for May 6, 1948. It was issued May 11, 1948, and the insured died from gunshot wounds, November 26, 1948. The application contained the following questions and answers, upon which the insurance company alleges that it relied in issuing the policy:

"Q. Have you any reason to suspect you are not now in good health? A. No.

"Q. Have you ever had any disease, injury or operation not mentioned above? A. No.

"Q. Have you been under the care of, or consulted a physician concerning yourself for any cause within five years? A. No."

The evidence discloses that during 1941 and 1942, more than five years prior to the application, the insured had consulted an osteopathic physician and had received treatment for a condition of "general malaise," and occasional heart flutters upon exertion; also for venereal disease, "low back" complaints, and varicose veins.

On August 30, 1943, within five years of the application, X-rays were taken of the insured's chest which showed tubercular lesions and a bone tumor, called an osteochondroma, on the inside of one of the upper ribs. Mr. Bacon was shown the X-ray films, told of the existence of the

tumor, and that it had malignant possibilities. He was advised to keep it under periodic observation by X-ray, but was also told by his physician that the tumor was benign, not malignant. He was further advised, however, that if he experienced any pain or unusual symptoms, he should consult a specialist. Other X-rays were taken on July 27, 1944, and on April 16, 1945, the latter about three years prior to the application for the policy. These X-rays showed no change in the size or texture or condition of the tumor, and nothing was done about it. None of these matters was disclosed in the application for the policy.

Two other physicians, who examined the X-rays during the trial, interpreted them as showing an osteochondroma, having definite malignant possibilities. These physicians testified that after age thirty about 5 to 10 per cent of this type become malignant, and when they do become malignant they have a definite effect upon the life expectancy of the individual suffering from the condition. One of these physicians testified that there was competent medical opinion that only about 2.6 per cent become malignant. Other witnesses testified that had the insurance company known of this condition, it would not have issued the policy.

On behalf of the cross-plaintiffs below, another physician examined the X-rays and testified that he could find no evidence of tuberculosis, but that osteochondroma was present. He testified that there was competent medical authority that only about 2 per cent become malignant.

■ The policy is a Florida contract, to be interpreted according to Florida law. Barnett v. New England Mutual Life Ins. Co., 5 Cir., 123 F.2d 712. By its express terms, the statements made in the application are representations, not warranties. In Metropolitan Life Ins. Co. v. Poole, 147

Fla. 686, 3 So.2d 386, the Supreme Court of Florida held that false answers, made by an insured in good faith in an application for a life insurance policy, do not necessarily vitiate the policy. This decision followed an earlier Florida decision, New York Life Ins. Co. v. Kincaid, 122 Fla. 283, 165 So. 553, 557, where it was also held that a failure to make full disclosure with reference to insurability in an application for reinstatement of a life insurance policy will not vitiate the reinstatement where the statements in the application are in good faith. It was there said: "Even if he [the insured] failed to make a full disclosure with reference to his insurability, it does not necessarily vitiate his reinstatement. The test is whether or not his answers to the questionnaire were made in good faith, and * * * this question * * * was for a jury to determine."

The questions asked in the Kincaid case are comparable to those here involved.[1]

In Madden v. Metropolitan Life Ins. Co, 5 Cir., 138 F.2d 708, 709, 151 A.L.R. 984, this court in interpreting the Poole case said: "In so ruling, the Florida Supreme Court, expressly rejected the distinction made in the Madden case [on a prior appeal], and accepted by most of the courts in the country, between a statement of opinion as to whether the insured had suffered from particular ailments and of fact as to whether he had or had not consulted a physician.[2] * * * It was taking its place with courts which hold that, where a statute or policy, as here, provides that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, a representation, though false, does not avoid the policy unless it was made with conscious intent to deceive; that whether it was so made is normally for the jury; and that * * *

1. In his questionnaire Kincaid certified that (1) He was then to the best of his knowledge and belief in the same condition of health that he was when the policy was issued; (2) that within the last two years he had had no illness, disease, or bodily injuries, nor had he consulted or been treated by a physician except by Dr. W. Osenbeck on July 24, 1929, for hemorrhoids; (3) that no company had examined him in the last twenty-four months for insurance. He certified the foregoing answers to be complete and true, and that the company might rely and act on them.

2. Compare Metropolitan Life Ins. Co. v. Madden, 5 Cir., 117 F.2d 446, and cases there cited in note 7.

unless the evidence admits of no other conclusion than that there was an intent to deceive, it is for the jury to determine whether the answer was fraudulent in fact, that is, made with intent to deceive, or whether it was given in good faith, that is, without conscious intent to defraud." See also Pan-American Life Ins. Co. v. Fowler, 5 Cir., 174 F.2d 199.

The rule stated in the above cited cases is applicable here. We can not say this evidence admits of no other conclusion than that there was a conscious intent to deceive, so as to require a directed verdict in favor of the insurer. Nor can we say that the evidence, as a matter of law, requires a jury verdict in favor of the company, nor a judgment to that effect by the court sitting as a court of equity. On the contrary, the evidence is susceptible of the view that the answers, though false, were without intent to deceive.

There is evidence that the insured appeared generally to be in good health. He had been told by his physician that the tumor was benign, not malignant. There is no evidence that the presence of the tumor inconvenienced or hampered the insured in his business or other activities. He was active in his business as president of a discount company, and went about his business and other affairs in a normal manner. Although an osteochondroma is a potentially serious condition, there is no evidence that this tumor had become malignant at the time of the application, nor that it ever became so thereafter, although further X-rays were made on August 16, 1948, about three months after the application, when the insured complained of pain in the area of the tumor. Nothing further was done about it, however, as these X-rays showed no change in the tumor, and the insured failed to keep an appointment with a physician to whom he had been referred for further consultation.

There is credible evidence that at the time of the last X-ray the tumor had not degenerated nor changed in size or structure in more than 5 years, and therefore was apparently non-malignant, although a biopsy, which was not done, is desirable for greater certainty. For more than three years prior to the application, Bacon had not submitted himself for further examination or treatment, which could reasonably be taken as an indication that he regarded the tumor as of little consequence.

■ The jury was entitled to consider this mental attitude on the part of Bacon, along with the testimony of one of his physicians, Dr. Leary, that he had advised Bacon that a tumor of this character was a relatively simple affair so long as it remained benign, which it then was, and that individuals may go through life with a tumor of this type without any inconvenience. This physician further testified that Bacon's general outlook on life was good, and that he had told Bacon that "everything was under control."

The jury was also entitled to consider that the tumor never became malignant, that insured appeared to be in good health, never showed any signs of fatigue, carried on his normal business and social activities, participated actively in recreations and sports, and that the insured died, not of disease, but from gunshot wounds. The insurer made no effort to cancel the policy until after his death. It also appears that in issuing the policy the insurance company did not entirely rely on the applicant's representations, but made at least some independent investigation of its own.

■ Whether or not, in all the circumstances, the insured regarded the tumor as inconsequential, and hence was in good faith in failing to report it, was a question of fact for the jury under the Florida decisions, and under our Madden case, 138 F.2d 708. The same is true of insured's other ailments. Dr. Dunk, one of insured's physicians, testified that when he examined him on September 22, 1943, nearly five years before the application, he found his heart condition normal. And Dr. Leary, another of insured's physicians, testified that the incipient tubercular lesions previously noticed in Bacon's lungs were of no concern, being entirely healed when he took his last X-ray, August 16, 1948.

■ Appellant contends that the trial judge erred in charging the jury that in order to constitute a ground of rescission

942

the answers given by the insured must have been not only false, but known by him to be false, and given with a conscious intent to deceive the insurance company. This charge is in harmony, however, with Metropolitan Life Ins. Co. v. Poole, supra, and Madden v. Metropolitan Life Ins. Co., 5 Cir., supra. See also Pan-American Life Ins. Co. v. Fowler, 5 Cir., 174 F.2d 199.

■ Appellant also complains that the trial judge over-emphasized, by too often reiterating, his charge to the effect that misrepresentations will not vitiate the policy unless made with a conscious intent to deceive. After reading and considering the entire charge, however, it appears to us that, although there was repetition, it was the result of a careful and painstaking effort on the part of the trial judge to have the jury fully understand the law of the case. We regard the charge as accurate and impartial, fully and fairly submitting the issues to the jury. Although the jury, as is frequently true in cases of this type, found some difficulty in agreeing, there is no convincing indication that it was over-emphasis on this or any other portion of the charge that caused the delay in reaching the verdict.

■ Appellant further asserts that its original action to rescind is equitable in nature, and that the issue of fraud should have been decided by the district judge, as chancellor, and not submitted to a jury as was done. But this is not a situation in which the insurer was obliged to either institute an immediate action to rescind or lose the defense of fraud in the procurement of the policy because of the expiration of the period of contestibility. This policy provides that it "shall be incontestible after it has been in force *during the lifetime of the insured* for a period of two years from its date of issue." (Italics supplied.) As the insured died within two years, the policy never became incontestible. The defense of fraud remained available in any action instituted on the policy by the beneficiary.

■ Instead of awaiting this course, however, the insurer assumed the offensive and moved to cancel the policy, which it was entitled to do. American Life Ins. Co. v. Stewart, 300 U.S. 203, 57 S.Ct. 377, 81 L.Ed. 605. The beneficiary, however, and the assignee bank, were entitled to assert the company's liability on the policy in a cross action in the nature of an action at law, which they did. The insurer defends on the ground that the policy was not in force at the death of the insured. In its answer to the bank's cross-claim the insurance company also adopted "all of the allegations of its claim for relief." This includes the fraudulent procurement of the policy charged in the complaint. The issues thus raised were legal, not equitable. Appellees were entitled, as of right, to a jury trial of such issues under civil rule 38, Fed.Rules Civ.Proc., 28 U.S.C.A., which they demanded. Barnett v. New England Mutual Life Ins. Co., 5 Cir., 123 F.2d 712. Compare Ettelson v. Metropolitan Life Ins. Co., 3 Cir., 137 F.2d 62, certiorari denied 320 U.S. 777, 64 S.Ct. 92, 88 L.Ed. 467; Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440. There is no objection to the trial judge empaneling an advisory jury and adopting its findings of fact, even in an equity case. Civil Rule 39(c). In re Pan-American Life Ins. Co., 5 Cir., 188 F.2d 833. See also Hargrove v. American Cent. Ins. Co., 10 Cir., 125 F.2d 225; Burkhard v. Burkhard, 10 Cir., 175 F.2d 593; Dickinson v. General Acc., etc., Co., 9 Cir., 147 F.2d 396. In the exercise of a sound discretion, the district judge might have held plaintiffs' equity suit in abeyance until the law issues raised by the counterclaim were disposed of. American Life Ins. Co. v. Stewart, 300 U.S. 203, 57 S.Ct. 377, 81 L.Ed. 605.

Other assignments have been examined, but no reversible error found.

Affirmed.