98 So.2d 382 (1957)
The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellant,
v.
Eleanor WHITTINGTON, Appellee.
No. 83.
District Court of Appeal of Florida. Second District.
November 15, 1957.
*383 Knight & Bell, Tampa, for appellant.
Julian H. Lifsey, Jr., Robert L. Pursifull, Tampa, for appellee.
PLEUS, Judge.
The action below was at law to recover on a life insurance policy brought by the widow as beneficiary thereunder, issued by the defendant below who is appellant here, upon the life of Jay R. Whittington. The face of the policy was $9,000, the cause was submitted to the jury and a verdict in the sum of $4,500 returned upon which final judgment was entered and to which final judgment this appeal is directed. The parties will be referred to as they appeared in the court below, the beneficiary as plaintiff, the insurer as defendant, and the deceased as the insured or applicant.
On November 20, 1953 the applicant made a written application for the insurance involved. In Part 2 thereof, he was asked and answered as follows:
"15. Question: Have you lost any time from work through illness during the past five years? Answer: No.
"16. Question: Have you consulted or been attended by a physician for any reason during the past five years? Give names, addresses, dates and reasons. Answer: No.
"18e. Question: Have you ever had: * * * a gastric or duodenal ulcer, * * * stomach * * * intestinal * * * trouble, or any indication of any disorder of the stomach * * * intestines * * *? Answer: No.
"18h. Question: Have you ever had: Any X-rays for diagnostic purposes or treatment * * *? Answer: Yes. State Health survey  annually 3 years. Results negative."[1]
The policy applied for, except for a preliminary term of two months, was what is referred to in the application as modified life at the standard premium rate. Because of the age of the insured and the fact that the amount applied for was less than $10,000, the policy was subject to issuance on a nonmedical basis, i.e. without actual medical examination.
The customary credit reports were run and the policy was actually issued and became effective as of January 28, 1954 with the interim term in the same face amount *384 effective as of November 28, 1953, the policy being actually delivered December 2, 1953. The purpose of this arrangement was so that at the reduced cost for term insurance the policy could become effective as to coverage with the higher rate being postponed for the two months interim. The applicant paid the sum of $16.02 for the interim term coverage.
Twenty-nine days after delivery of the policy and on December 31, 1953 insured suffered an intestinal hemorrhage, was admitted to the hospital January 2, 1954; surgery was performed January 5, 1954, and the insured died January 14, 1954, the medical cause of death being gastro-intestinal hemorrhage due to a penetrating duodenal ulcer.
The company denied liability and complaint was filed by the plaintiff September 22, 1954. To the complaint the defendant filed affirmative defenses that the answers to Questions 15, 16, and 18e were false in fact and the answer to Question 18h was falsely incomplete and constituted fraudulent concealment.
The plaintiff then filed a reply setting up that the applicant's statements were made in good faith, that he believed himself to be in good physical condition and with a normal life expectancy. Motion to strike this reply was denied.
At the trial it was conclusively proved as follows:
1. That the applicant had lost time from work through illness during the period of sixteen months preceding the application and that he knew the cause of such illness to be an ulcer.
2. That applicant had consulted a physician, making six visits to him, during the first six months of 1952 at which time his illness was diagnosed as an active duodenal ulcer and of such fact applicant was fully apprised. Likewise was it proved that applicant consulted a physician in June of 1953 because of illness resulting from the ulcer.
3. That applicant had a duodenal ulcer in 1952 of which he had express knowledge and that he in fact died as a result thereof.
4. That applicant had had an X-ray for diagnostic purposes in January 1952 which X-ray showed an active duodenal ulcer and of which fact applicant was apprised.
It was further shown that upon being admitted to the hospital on January 2, 1954 applicant and plaintiff, jointly and in the presence of each other, furnished the physician at the hospital with applicant's medical history fully disclosing to such physician the past history of the ulcer.[2]
The basic question is whether or not the above recited facts and proofs are such to avoid the policy as a matter of law.[3] We have no hesitancy in saying that they are *385 and that the court below erred in allowing the case to go to the jury on the false premise of alleged good faith.[4] It would be almost sufficient to conclude the opinion at this point. However, in view of the uncertainty injected into the law of Florida by certain federal decisions we deem it essential to place the matter finally at rest.
We unhesitatingly state that the rule in Florida from the time originally announced to and including the present has been:
That there is nothing mysterious or unique in contracts of insurance in this regard; that an applicant for insurance is bound to exercise toward the company the same good faith which he may rightly demand of it; that fair dealing by both parties should be expected. Therefore, a failure on the part of an applicant to truthfully answer material questions propounded by the company concerning facts within his knowledge, will invalidate the policy without proof of any actual, conscious design or intent on his part to defraud; and accordingly in such case there is nothing to submit to the trier of the facts dealing with the alleged good faith of the applicant. This rule is not only common sense, in keeping with the general rules of contract law but is likewise the only rule consonant with moral principle and ethical business dealing.
This case does not involve the situation where there is a mere expression of opinion concerning the general health or insurability of the applicant. Cases calling attention to this distinction are noted in the margin.[5] Nor does this case concern itself with inconsequential and immaterial matters involved in the answers of an applicant such as disclosing consultations with a physician for slight or temporary ailments.[6] Nor does this case involve the situation where, in good faith the applicant truthfully answers but the soliciting agent or the medical examiner inserts false or incomplete replies.[7] We are equally unconcerned with the ramifications of the situation existing where the company conducts its own independent investigation, complete enough to satisfy itself and in reliance thereon elects to contract with the applicant.[8]
Having now eliminated the matters not involved we are better able to focus attention upon the precise deviation by our brethren of the federal bench injecting the uncertainty that gave rise to the erroneous premise in the court below:
Beginning in Mutual Life Ins. Co. of New York v. Denton, 1927, 93 Fla. 276, 112 So. 53, the Supreme Court of Florida announced the rule heretofore stated that an untrue answer knowingly made to a question which is material, vitiates the policy. *386 It cited with approval a long list of cases including Mutual Life Ins. Co. of New York v. Hilton-Green, 1916, 241 U.S. 613, 36 S.Ct. 676, 60 L.Ed. 1202.
The rule, rather than being weakened was reaffirmed in Kincaid, footnote 5, supra, wherein the Supreme Court said [122 Fla. 283, 165 So. 559]:
"It is also academic that failure by the one insured to disclose conditions material to the risk of which he is aware make the contract voidable at the insurer's option. This principle is well settled and is approved by this court."
The true rationale of Kincaid is that where a policy of insurance has been carried long enough to acquire equities under its terms and the company frustrates the maturity of such equities the insured cannot thereafter be deprived of them; particularly in view of the fact that the company made its own additional investigation as the result of which, so says the Supreme Court:
"All the evidence relied on to cancel the reinstated policies were (sic) present and available at the time of reinstatement."
Seventeen days before the decision in Winer, footnote 6, supra, the Supreme Court decided Thompson v. New York Life Ins. Co., 1940, 143 Fla. 534, 197 So. 111 in which it reaffirmed Denton and Hilton-Green; cited with approval Aetna Life Ins. Co. v. Moore, 231 U.S. 543, 34 S.Ct. 186, 58 L.Ed. 356, and held that false answers on matters material to the risk were sufficient to vitiate the policy; that an insurance company is entitled to exercise its discretion and judgment and elect to contract or not contract on the basis of such information as it may desire regarding the physicial condition of the applicant; and that it is the duty of an applicant to answer truthfully the questions which he assumes to answer and which are to become a part of his application and of the contract. The question of whether these disclose facts material to the risk are matters for the insurer to determine and it can only reach a fair determination when furnished with truthful answers. The Circuit Court had adjudged as a matter of law that plaintiffs were not entitled to recover and reversed the Civil Court of Record; on petition for certiorari the writ was denied.
In Winer v. New York Life Ins. Co., footnote 6, supra, there is some fuzzy language but the unquestioned crux of the decision is to interpret Kincaid, supra, as not having been decided on any test of good faith but rather upon the additional investigation disclosing all evidence relied on; and in drawing the distinction between immaterial and inconsequential answers concerning slight or temporary ailments and positive statements of fact falsely made with respect to a material matter. The latter, the Supreme Court holds, will, nothing else appearing, be deemed to have been made willfully, the intent to deceive being necessarily implied as a consequence of such action by the applicant. The final decree cancelling the policy was affirmed.
Nor did the federal courts have any difficulty in ascertaining the correct rule either before or after they were made Erie conscious.[9] Thus in New York Life Ins. Co. v. Bullock, footnote 5, supra, then District Judge Strum citing Hilton-Green and Denton, supra, held that failure to disclose material matters inquired about by the company and known to the applicant will invalidate the policy without proof of any actual, conscious design on the part of the applicant to defraud. The plaintiff company was held entitled to a decree of cancellation.
Again in Travelers Ins. Co. v. Wilkins, footnote 5, supra, District Judge Strum *387 again reaffirmed the rule relying specifically upon Kincaid as setting forth the rule as being "academic". He likewise stated that such rule was consonant with the weight of authority. He construed the language in Kincaid concerning good faith as having to do with questions merely calling for the opinion or judgment of the applicant. Likewise in Metropolitan Life Ins. Co. v. Madden, 5 Cir., 1941, 117 F.2d 446 in an opinion by Circuit Judge Hutcheson the Florida rule was specifically announced as stated above and that a false answer concerning a fact and being material vitiates the policy, if known to be untrue, without regard to whether there was any conscious fraudulent purpose or intent to deceive. Winer and Thompson are both cited as authority enunciating what the court holds to be the settled law of Florida. This decision we shall hereafter refer to as "Madden genuine" while the later Madden decision, hereinafter covered, we shall term "Madden spurious."
By way of summary, as of February 5, 1941 there was no question in either the state or federal courts as to the correct and applicable Florida rule.
On July 1, 1941 the Supreme Court of Florida decided Metropolitan Life Ins. Co. v. Poole, footnote 7, supra. This case involved nothing more than the situation where the applicant in response to a defense that false answers had been made was shown to have given correct answers which were not correctly written into the application by the agent who without advice to the applicant undertook to write such answers as he, the agent, desired, Williams, supra, was held authoritative and any use of Kincaid is dicta. Unfortunately, headnote 2 as the case was finally reported contains matter not adjudicated. It is this headnote that is later relied upon in "Madden spurious". The instructions given are not set forth in the opinion but as revealed by the record, if properly taken in context with the issues involved, did not alter the rule. In fine, if the Supreme Court of Florida in Poole actually overruled or even altered the well-established rule then existing, it acted in a most strange and uncertain fashion. Denton, supra, and Winer, supra, are not even cited but on the other hand Williams, supra, is, as well as other cases that have to do with the true issue involved. This is likewise reinforced by Columbian Nat. Life Ins. Co. v. Lanigan, footnote 7, supra, wherein Poole is placed side by side with Williams as authority for the rule of estoppel where the agent inserts answers in an application which do not accord with the information given by the applicant.
Then came "Madden spurious", Madden v. Metropolitan Life Ins. Co., 5 Cir., 1943, 138 F.2d 708, 151 A.L.R. 984. Circuit Judge Hutcheson writing for the court, held that by the Poole case Florida had expressly rejected the distinction and the rule announced in "Madden genuine" and thereby aligned itself with the minority rule; and that in some strange fashion deliberate falsehood consciously employed as the predicate for another's action can somehow involve an element of good faith concerning which one is entitled to go to a jury.
That there may be no question we unhesitatingly hold that the Court of Appeals was in error in "Madden spurious" in holding Poole to have in any manner changed the basic rule; we decline to follow that decision and hold that the lower court was in error in apparently relying upon it for its instructions and its action in permitting this case to go to the jury.
"Madden spurious" was cited in Pan-American Life Ins. Co. v. Fowler, 5 Cir., 1949, 174 F.2d 199 along with Poole as authority for there being a question of good faith and a jury issue presented by the evidence. Thus was the error compounded as it was likewise in Reliance Life Ins. Co. of Pittsburgh v. Everglades Discount Co., 5 Cir., 1953, 204 F.2d 937. The latter opinion was written by then Circuit Judge Strum in which he cites Kincaid as authority *388 for Poole without the pertinent comment he had made on Kincaid when as District Judge he wrote his opinion in Wilkins; and without citing Denton which was a predicate for his decision as District Judge in Bullock, supra. Thus at this point Poole and "Madden spurious" are still strange bedfellows in the 5th Circuit.
In bringing Poole up to date in the 5th Circuit we find in Providence Washington Ins. Co. v. Rabinowitz, 5 Cir., 1955, 227 F.2d 300 that Chief Judge Hutcheson finally puts Poole in its correct environment by citing it in the same footnote with Williams, supra, and Lanigan, supra, as involving, correctly, estoppel by action of the company's agent.
Realizing the differences involved, we cite Chaachou v. American Central Ins. Co., 5 Cir., 1957, 241 F.2d 889 holding that in a windstorm policy, honesty and fair dealing are essential and that even without requiring proof of prejudicial reliance by the insurer, if there was a willful false statement of a material fact, liability does not attach to the company.
The last case is that of New York Life Ins. Co. v. Strudel, footnote 8, supra, and is important not only because of its recent appearance but because of its reassertion of the rule applicable to a Florida contract that intentional misrepresentation by the applicant of a material fact relied on by the insurer permits the latter to avoid the policy. Denton and Thompson are cited as authoritative Florida decisions and Denton is reiterated as containing the correct Florida rule regarding the degree of good faith required of an applicant for life insurance; Lanigan, supra is correctly interpreted; but "Madden genuine", Poole, and "Madden spurious" are conspicuous by their absence and we trust the latter has been finally relegated to the limbo of erroneous pronouncements.
We reiterate in the words of Judge Parker in McSweeney v. Prudential Ins. Co. of America, 4 Cir., 1942, 128 F.2d 660, 664:
"We think it clear that fraud of the sort required to avoid the policy is shown to exist where there is a false representation as to a material matter, which is false to the knowledge of the applicant at the time it is made and which is made for the purpose of being acted on by the company. Where these facts appear, it is idle to inquire further whether there was intent to defraud; for the intent to defraud in such case is the intent to obtain the policy by the false representations. Any question as to whether the insured may honestly have thought that he had recovered from the serious ailment from which he knew that he had suffered and for which he had consulted a physician is beside the point. Inquiries were addressed to him with regard thereto as a basis for determining whether the policy should be issued; he knew that his answers would be taken into consideration and acted on by the company; and, when he made false answers which he knew to be false as as basis for such action, fraudulent intent in making them may reasonably be inferred. * * * His good faith, under such circumstances, is not a matter for speculation, but must be determined from a consideration of what he has deliberately done. * * *."
We therefore reverse the judgment of the court below with directions to enter judgment in favor of the defendant below, notwithstanding the verdict.
Reversed.
KANNER, C.J., and ALLEN, J., concur. (In Judgment Only.)
KANNER, Chief Judge and ALLEN, Judge (concurring specially).
We concur in the judgment insofar as it reverses the lower court, but do not concur *389 except as to the factual situation in the opinion written by Judge Pleus.
The able Circuit Judge who tried this case, in his pretrial order stated the issues that were involved:
"3. In general, the defendant denies liability on the ground that Jay R. Whittington failed to disclose material facts regarding his health in response to pertinent questions contained in his application for the insurance.
"5. The contested issues raised by the pleadings are summarized as follows:
"The written application for the insurance, which Whittington signed on Nov. 20, 1953, contains, among other questions relating to his health the questions which are stated in material substance as follows; the answer to each question, as shown in the application, and the reason or reasons for which the defendant claims those answers were false, being given following each of the questions:
"(a) Question: Have you lost any time from work through illness during the past five years? Answer: No.
"Defendant alleges that Whittington lost time from work through illness during the period of sixteen months preceding the application.
"If the defendant proves, by a fair preponderance of the evidence, that Whittington's answer was false because he lost time from work through illness due to a serious ailment material to life expectancy, during the period of sixteen months preceding November 10, 1953, and that, when he answered the question, he knew such ailment caused the illness, the defendant will be entitled to a verdict.
"(b) Question: Have you consulted or been attended by a physician for any reason during the past five years? Give names, addresses, dates and reasons. Answer: No.
"Defendant alleges that Whittington consulted a physician, Dr. Richard W. McBurney, in Painesville, Ohio, making six visits to him during the first six months of 1952, for illness diagnosed by that physician as an active duodenal ulcer, and that he also consulted a physician, Dr. M.P. Eslin, Jr., in Tampa on June 28, 1953, for illness caused by an ulcer.
"(c) Question: Have you ever had a gastric or duodenal ulcer, stomach or intestinal trouble, or any indication of any disorder of the stomach or intestines? Answer: No.
"Defendant alleges that Whittington had a duodenal ulcer in 1952, of which he knew on and prior to the date of the application, and that he died of a hemorrhage due to such an ulcer.
"If the defendant proves, by a fair preponderance of the evidence, that Whittington's answer to either of the last two questions, or to both of them, was false for the reason assigned by the defendant, and that he knew the answer to be false for such reason when he gave it, the defendant will be entitled to a verdict.
"(c) Question: Have you ever had any X-rays for diagnostic purposes or treatment? Answer: Yes. State Health survey-annually 3 years. Results negative.
"Defendant alleges that Whittington had an X-ray for diagnostic purposes at Lake County Memorial Hospital in Painesville, Ohio, on January 28, 1952, which X-ray indicated an active duodenal ulcer.
"If the defendant proves, by a fair preponderance of the evidence, any one or more of its defenses, as above stated, of false or incomplete answers by Whittington, known by him to be *390 false or incomplete, and the matter that would have been disclosed by, or as a result of true or complete answers was material to the defendant's risk assumed in the policy as written, the defendant will be entitled to a verdict; but if it fails to do so, the plaintiff will be entitled to a verdict.
"The plaintiff alleges that the defendant is estopped to rely on any inaccuracies existing in the application for insurance, because the defendant had knowledge of the same when it issued the policy. The defendant denies having had such knowledge at such time."
Pursuant to the pretrial order, the trial judge by his instructions submitted the issues as stated to the jury for determination.
The defendant insurance company submitted over-whelming proof on the defenses hereinabove set forth, which were not rebutted by the plaintiff. The lower court, relying upon the case of Metropolitan Life Insurance Company v. Poole, 1941, 147 Fla. 686, 3 So.2d 386, tried the case upon the basis that false answers made by the insured in good faith, to questions in an application for a life insurance policy, did not vitiate the policy.
The defendant carried the burden of proving the materiality of the questions asked, the falsity of the same and the bad faith on the part of the deceased. Since no proof was adduced by the plaintiff from which the jury could have concluded false answers in the policy were made in good faith, there was no issue of fact to go to the jury, and the Judge should have directed a verdict in favor of the defendant.
We express no opinion as to whether or not Metropolitan Life Insurance Company v. Poole, supra, changed the rule with reference to false answers in an application for an insurance policy, or whether or not the Circuit Court of Appeals of the Fifth Circuit in Madden v. Metropolitan Life Insurance Company, 5 Cir., 1943, 138 F.2d 708, 151 A.L.R. 984, correctly interpreted that opinion as changing the rule of law in Florida with reference to false answers to material questions on application for life insurance policy. These questions are not necessary to a decision in this particular case and, therefore, any comment by the court would be merely obiter dictum.
We conclude, therefore, that the lower court should be reversed for failure to direct a verdict in favor of the defendant at the conclusion of all the evidence.
Reversed.
NOTES
[1] The application concluded: "I Hereby Declare that all of the statements and answers in Parts 1 and 2 of this application are complete and true. Be Sure That You Have Read The Answers To All Questions In Parts 1 and 2 Of The Application Before Signing."
[2] While not actually pertinent we cannot overlook that the proofs of death and the claimant's statement filed by plaintiff as claimant and certified to by her as being complete and true to the best of her knowledge and belief, in response to the positive requirement that it disclose the names of all physicians who attended the deceased during the preceding 5 years, listed only the physician who attended the deceased from January 2, 1954 until the date of his death on January 14, 1954. The claimant was of course the wife who had twelve days before, joined in giving the past medical history.
[3] The policy in this case contained the following provision which is more or less standard and in many states statutory (See Section 635.211(b) Florida Statutes 1955 which was not in effect at the time the policy in this litigation was issued):

"All statements made in the Application shall in the absence of fraud be deemed representations and not warranties, and no statement shall avoid this Policy or be used as a defense to a claim hereunder unless it is contained in the Application and a copy thereof is attached to this policy when issued."
[4] The significant fact that the jury's verdict was for precisely 50% of the face of the policy can hardly be explained on the basis of the vagaries and peculiarities of juries with which every trial lawyer is familiar. Rather, it evinces an attempt on the part of the jury to apply some kind of rule known only to them, but not to the law, of "comparative liability". Probably, it satisfied their collective conscience by cutting in half the award against the defendant in the face of the uncontroverted proof that the applicant was guilty of fraud. Clearly the verdict called for demand all or nothing. This merely emphasizes that in the face of this record the issues should have been determined as a matter of law.
[5] New York Life Ins. Co. v. Bullock, D.C.S.D.Fla. 1932, 59 F.2d 747; New York Life Ins. Co. v. Kincaid, 1935, 122 Fla. 283, 165 So. 553, rehearing denied and further rehearing denied 1936, 123 Fla. 678, 167 So. 365; Travelers Ins. Co. v. Wilkins, D.C.S.D.Fla. 1940, 33 F. Supp. 117.
[6] See Wharton v. Aetna Life Ins. Co., 8 Cir., 1931, 48 F.2d 37, 43; cited in Winer v. New York Life Insurance Co., 1940, 143 Fla. 652, 197 So. 487.
[7] Massachusetts Bonding & Ins. Co. v. Williams, 1936, 123 Fla. 560, 167 So. 12; Metropolitan Life Ins. Co. v. Poole, 1941, 147 Fla. 686, 3 So.2d 386; Columbian Nat. Life Ins. Co. v. Lanigan, 1944, 154 Fla. 760, 19 So.2d 67.
[8] Kincaid, footnote 5, supra; Lanigan, footnote 7, supra; New York Life Ins. Co. v. Strudel, 5 Cir., 1957, 243 F.2d 90.
[9] Erie Railroad Co. v. Tompkins, April 25, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.